## William C. Baker v. Henry L. Pierson,

AND

## Henry L. Pierson v. William C. Baker.

A, the holder of the first of five mortgages on a piece of land, took proceedings in chancery to foreclose it, making all the subsequent mortgagees parties, except D, the last. Decree for sale was obtained, and sale made, at which B, who was administrator of C, the second mortgagee, then deceased, became purchaser for a few dollars over the amount of the first mortgage. B bought in his own name, but stated at the time that he bought to protect the interests of the C estate. He then filed his bill against D, setting up all the facts, and praying that D be decreed to redeem by paying the amount of both the A and C mortgages, and the costs of the foreclosure and sale, or be foreclosed. D filed a cross-bill, claiming a right to redeem on paying the amount of B's bid and interest. The mortgaged premises were shown to be worth at least the amount of the A and C mortgages. — *Held*, That D could not be permitted to redeem without paying the amount of both these mortgages.

### By MANNING J.

B, by his purchase, acquired the several rights in the land of all the parties to the foreclosure, and may use them to protect his interest in the land in the same way, and to the same extent that they could have been used by such parties had no foreclosure taken place. D's rights are neither greater nor less for the proceedings to which he was not a party, and he has a right to redeem from B only by paying to him the full amount of all the prior mortgages. But as B, by his bill, asks only that D be decreed to pay the amount of the first two mortgages and costs, he may redeem on those terms.

### By CHRISTIANCY J.

The relative rights of D and the several prior incumbrancers were, in no respect changed by the foreclosure proceedings, except as B became entitled to the A mortgage by his purchase. D can redeem only on paying the amount of all the prior mortgages, but without costs of the former suit. The redemption moneys shall be apportioned by paying first to B the amount of the A mortgage, and costs and interest thereon, and by apportioning the balance between the holders of the second, third, and fourth mortgages, *pro rata*, according to the sums owing on them respectively, deducting from the second, and paying to B the amount received thereon from B's purchase.

### By MARTIN Ch. J.

The liens of the third and fourth mortgagees were extinguished by the decree and sale in the suit to which they were parties, and can not be revived by the proceedings taken to foreclose D's equity of redemption. D should be permitted to redeem on the same terms as if he had been a party to the prior proceedings, and the intermediate incumbrancers had waived their right of redemption — that is, by paying the amount of the A and C mortgages, and interest and costs.

Questions reserved from the Wayne Circuit Court in Chancery, as follows:

"*To the Supreme Court of the State of Michigan:*

"At the hearing before me, on the 17th day of February, A. D. 1859, of the above named causes (both being ordered to be heard together), the following facts were admitted or proved:

"That one Lewis Ives, being the owner of certain lands known as the "Dry Dock property," executed two mortgages thereon: (1) One to David Moore, for $5,000; (2) One to George F. Turner, for $3,000.

"Ives afterwards conveyed the land to Sylvester Larned, who executed mortgages thereon as follows: (3) One to Lewis Ives, for $3,156.71; (4) One to Henry S. Turbell, for $2,000; (5) One to Henry L. Pierson, for $5,500.

"The mortgages had priority in the order in which they are named above, and are all past due and unpaid. The mortgage of H. L. Pierson was dated July 29th, 1856, but was not acknowledged till October 24th, 1856, nor recorded or delivered until the last of said October.

"On the 7th of October, 1856, Moore filed his bill to foreclose the mortgage to him, making all the then existing subsequent incumbrancers parties defendant. Pierson was not made a party, nor was any notice of *lis pendens* filed. Turner had previously died, and Baker was administrator of his estate, and, as such, held the Turner mortgage, and was made a party. Moore obtained a decree of foreclosure and sale, and under it the property was sold on the 21st of November, 1857.

"Subject to objection, it was testified that George F. Porter was attorney for Baker; that he bid off the property at the sale, in the name of Baker, and that at the time of purchase he said Baker's intention .in purchasing was to protect the interests of Turner's estate. Under like objection, the witness stated that he had no personal knowledge, but heard that Ives was insolvent. The property was bid off for the sum of $6,372.76, being the amount of principal and interest of Moore's mortgage, together with costs, and a few dollars over.

"The property was proved to be worth the amount of the two first mortgages at least. The commissioner's deed conveyed the land to William C. Baker (in his own right, and not as administrator), and there was no proof that the money paid by Baker was advanced from funds of the estate of Turner.

"In the cause first named above, the bill set up substantially the foregoing facts, and contained a declaration that the land was held in trust for Turner's estate; and the bill prayed that Pierson might be required to pay the amount of principal and interest due upon the first (Moore) mortgage, and the costs of that foreclosure and sale, and also the principal and interest due on the second (Turner) mortgage, and the costs of this suit; and to pay the same within a short period, to be fixed by the court; and in default thereof, that he be debarred and foreclosed of all right to redeem the lands. And the bill further prayed, in case the defendant should be allowed to redeem on paying merely the Moore mortgage, that then the Turner mortgage should be decreed to be still subsisting, and a lien upon the land prior to all others.

"The defendant, in his answer, did not deny the said facts, save the allegation that the land was held in trust; as to which it left the complainant to his proofs; but claimed the right to redeem on paying merely the amount bid by Baker at the sale, together with the interest thereon.

"At the time of filing his answer, Pierson also filed a cross-bill (which is the second suit above named), making Baker, in his own right, the sole defendant; setting up the above facts substantially, except as to Baker's intentions in buying the land, and the character in which it is now held by him; and asking to redeem on the same terms claimed in his answer in the original cause.

"To which cross-bill Baker filed his answer, reiterating the facts and declarations of trust, as above set forth, and

insisting that Pierson could redeem only upon the same terms as those set forth in the original bill.

. "Upon the facts and pleadings the following questions arise, to-wit:

"1. Upon what terms can Pierson be allowed to redeem the said lands from Baker? What sums must he pay, and to whom?

"2. If he can redeem by paying off merely the Moore mortgage and costs, can the Turner mortgage be declared to be a subsisting lien upon the land, and have priority over all others?

"These questions of law being new, and upon which I have doubts, and desire the opinion of the Supreme Court, I have reserved the same for that purpose, and hereby respectfully report them, and ask the advice and instruction of the said Supreme Court in reference thereto.

"All of which is respectfully submitted." "B. F. H. WITHERELL, *Judge of the Circuit Court for the County of Wayne.*"

"Dated, February 28th, 1859."

*Towle, Hunt & Newberry,* for Baker:

1. There is *no statute* authorizing redemption upon the terms claimed by Pierson, or upon any other terms. The only right which Pierson has is derived from general principles of equity.

2. According to general principles of equity, a subsequent incumbrancer can redeem lands from prior incumbrancers, only by paying the full amount due to them.—1 *Hill. on Mort.* 371-2; 4 *Kent,* 163; 12 *Ves.* 59. So strictly is this rule observed, that a party can not redeem even a part of the land without paying the whole mortgage debt.— *Ibid.*; 31 *Me.* 28. Even a dowress, in order to redeem her one-third, must pay all.—1 *Hill. on Mort.* 408; 8 *Barb.* 618. The fact that the prior mortgagee has assigned for less than the amount due, does not alter the rule.—28 *Me.* 336; 1

*Vern.* 476; *Ibid.* 336.   Even if the mortgagor has sur-
rendered the property to the mortgagee, and thereby̓ extin-
guished the debt, an intermediate mortgagee must pay all.—
2 *Conn.* 161.

Where a *second mortgagee has paid off* a prior mort-
gage, a third mortgagee, or the mortgagor himself, in order
to redeem, must pay the full amount of the *first and second*
mortgages.— 9 *N. H.* 392;  7 *B. Monr.* 66;  14 *N. H.* 61;
7 *N. H.* 100.  So one of several who are interested in the
equity of redemption, paying off an incumbrance, can hold
a lien on the land to the extent of his advances. — 4 *Johns.*
*Ch.* 370; 2 *Cow.* 118; 9 *Ibid.* 409; 3 *Wend.* 412; 5 *Hill,*
280; 5 *Pick.* 146; 8 *Ibid.* 497; 17 *Ibid.* 47; 19 *Ibid.*
231; 9 *Barr,* 341.

3.  These general rules must apply in the present case.
As regards Pierson, the proceedings in Moore's foreclosure
suit are *res inter alios acta;* and are, as to him, a *mere.*
*nullity.*   The case is the same as if Baker, without any
foreclosure or other suit, ¦had taken up or · paid off the
Moore mortgage, *or ·had taken an assignment of it.*   As.
against Pierson, he still holds that mortgage, and also the.
Turner mortgage, as subsisting prior liens upon the land.

Now, if Pierson's rights as against them are not barred,
then Baker's as against him are not; for estoppels must be
mutual and reciprocal.— 1 *Bouv. Law Dict.* 526; 5 *Bac.*
*Abr.* 429; 3 *Rand.* 563; 2 *Johns.* 382.

The claim set up by Pierson rests solely on this ground:
That he, by means of proceedings in which he had no.
part or lot, and without any act whatever of his̓ own, is to.
be transferred to a position of priority over others which
he did not have by virtue of his original contract.   Such
a claim, we insist, is contrary to all rules of equity and
common sense.— 4 *Paige,* 58; *Ibid.* 204; 1 *Paige,* 48, 78;
3 *Johns. Ch.* 459.

Pierson's right to redeem from the Moore mortgage on.
any terms, is founded solely upon the hypothesis for which

we contend, to wit: That that mortgage is, as to him, a *subsisting* mortgage. He can not redeem from *a decree and sale*, but only from a subsisting mortgage, and for the reason only that it is *a mortgage*.

But if the Moore mortgage is a subsisting one, the Turner mortgage is so likewise. It is so *a fortiori;* for there can be no pretense that it is merged in, or extinguished by, the decree. The latter, then, must be paid as well as the former, before Pierson can have the land clear.

4. The sale, where all incumbrancers are not made parties, is no criterion of the actual value. — 11 *Paige*, 28 ; 3 *Barb. Ch.* 150 ; 5 *Conn.* 531 ; 4 *B. Monr.* 40 ; 2 *Conn.* 161.

5. We contend that Baker became subrogated to the rights of all the parties to the foreclosure suit, *to the extent of the amount paid by him;* and to the rights of those particular parties to whom his money would, by law, be distributed. — 4 *Paige*, 531 ; *and the cases cited above.*

6. If we are correct in our views, then it follows that Pierson, in order to redeem the land entirely, must pay all the mortgages prior to his own.

7. If Pierson is allowed to redeem the land from the first mortgage alone, by paying to Baker the amount bid, and then to set up that mortgage as a subsisting one prior to the Turner mortgage, then Baker, as holder of the latter, must have at once the right, on his part, to redeem again from the Moore mortgage. And all he would be required to do, would be to pay back again to Pierson the very money 'he had just received; and thus the parties be placed back again just where they are now.

Such a proceeding would be mere child's play — a farce, to which this court will not lend its aid or sanction.

8. The question as to whether Baker holds the land now as administrator, or in his own right, is not material to the decision of the questions reserved. The evidence shows (and without that evidence the court would, under

all the circumstances, presume) that Baker's design in buying was to protect the interests of the estate which he represents; and that it was his design, and for his benefit, that the Moore mortgage should not be extinguished, but kept alive as a subsisting lien. In such a case, equity will keep the lien alive, in order to do justice. — 9 *N. H.* 392; 7 *B. Monr.* 66; 14 *N. H.* 61; 7 *N. H.* 100.

*W. Gray,* and *T. Romeyn,* for Pierson:

1. Baker is to be deemed the purchaser on his own personal account. He, in fact, made the purchase, and took the deed in his own name. It does not appear that he paid for the property with the money of the Turner estate; and unless he did, there can be no pretense of a resulting trust in favor of the estate. If he did use the money of the estate, or otherwise charge the estate for this purpose, he had no right or lawful authority to do so. His general power as administrator did not extend to the conversion into lands of the money of the estate; and it does not appear that his asserted action in this matter has ever been sanctioned by any competent party. Besides, this attempt to create a trust in this way is opposed to the provisions and policy of the statute of trusts. — *Comp. L.* §§ 2637, 2638, 2639.

2. Viewing Baker as a purchaser in his own right, there is no pretence for compelling Pierson to redeem the Turner mortgage, that does not apply equally to compel him to redeem those of Ives and Turbell.

3. Whether Baker bought on his own individual behalf or in trust for the Turner estate, still, *in the absence of any redemption,* all claiming under Turner's mortgage are now barred from further claims on the land under it.

4. The lien of this mortgage can not be *reinstated* by allowing Pierson to redeem. There is no natural equity in this claim of Baker. The premises are *presumed* to have brought at public sale their full value. Suppose the evi-

dence were proper which showed that they were worth at least the amount of the first two mortgages. Baker bought them for the amount of one only, and holds the other as a subsisting claim against the mortgagor, and has a lawful right to collect the whole against him.

Then, if Pierson do not redeem, Baker will hold the property with a clear title, for half its asserted value, and collect his mortgage *in addition*.

We can see no hardship in the application of the rigid rules of law to this case. And if there were, the court should not regard it in settling a general rule. — See *Kimmell v. Willard's adm'r*, 1 *Doug. Mich.* 221.

If the purchase at the foreclosure sale had been made by a *stranger*, it must be conceded that the lien of the Turner mortgage would have been for ever lost, unless it should be in some way re-created by Pierson's redemption. That the purchase was made in Turner's behalf, can make no difference in the principle. — 9 *Cow.* 346..

A *subsequent* purchaser, either from Turner, or from a stranger, if such had bought at the foreclosure sale, would take a title free from all mortgages represented in the foreclosure suit. These consequences could not result if the mortgage had not been in fact and in law *separated from the land*.

There is nothing in the legal character or incidents of a redemption, according to equitable rules, to *re-construct* this union. By redeeming, Pierson succeeds to the estate of Baker in the lands; and Baker is left with his unsatisfied bond and mortgage, and all his claims and rights against Ives, and in the position which he voluntarily assumed.

If Pierson redeem, he must pay the entire purchase money, whatever be its proportion to the actual value of the property. Suppose that Baker had bid to the full amount of Turner's mortgage. He would then hold the property free from the other mortgages represented in the

foreclosure. But if Pierson redeem, he must pay Baker the whole amount bid; and he gets, it is contended, not Baker's title, as he held it, but a title subject to the lien of the two intervening mortgages. Surely, the law and logic tending to such a conclusion must be fallacious.

5. The statute evidently contemplates, in the case of a chancery sale or foreclosure, that the premises should be sold, and that the purchaser should buy them, *free from the liens of all the incumbrancers who are made parties ; and that the purchase money, shall, as to all such, take the place of the land.* — *Comp. L.* §§ 3571, 3572, 3573.

The purchaser takes the *same estate* that would have vested in the mortgagee if the equity of redemption had been foreclosed. The deed passed to the purchaser all the title of the mortgagor and of Moore, free from all claims of the several parties to the suit. The surplus of the purchase money paid for this title and estate, on this sale, thus cutting off these parties, is brought into court for the use of those entitled to it. The sale, then, embraces the estate not only of the first mortgagee, but of the subsequent mortgagees who have been made parties; and they have their claims upon the surplus money thus bid for their estates. This right of these parties to the surplus moneys is entirely inconsistent with the notion of their retaining their mortgage estates or liens.

Their rights are terminated, while the rights of an incumbrancer not made a party are not affected. — See *Packer v. Rochester and Syracuse R. R. Co.* 17 *N. Y.* 283.

We, therefore, insist that Pierson should be allowed to redeem on paying to Baker the amount bid by him on his purchase, with interest.

MANNING J.:

Pierson claims a right to redeem on paying Baker what he paid for the premises at the sale in the Moore foreclosure suit. This he clearly has no right to do. The fore-

closure was in chancery, and not at law, under a power of sale in the mortgage, where the statute gives the mortgagor and his grantees a right to redeem at any time within a year after the sale. In chancery the sale is absolute, and the purchaser takes a good title against all parties to the suit. In other words, he takes the several interests of each in the land. It is this he purchases, and not a right in the land equal only to the money he pays; which would be the case if a subsequent mortgagee, not a party to the foreclosure, could redeem of him on paying that sum. Having acquired the rights of all, he stands in their place, and may use the rights so acquired to protect his interest in the land, and for his benefit, in the same way, and to the same extent, they could be used by such parties had no foreclosure taken place. To this extent the purchaser's interest in the land extends, and will be protected in equity, and no further. He acquires no other interest than this against a mortgagee who was not a party to the suit. Such mortgagee is not bound by the foreclosure, and his rights are neither greater nor less in consequence of it; and he may file his bill to foreclose his mortgage as if nothing had been done, except he would have to make the purchaser a party, who, in such case, would be the only necessary party, if complainant should state in his bill the previous foreclosure, and treat the purchaser as the assignee of the several interests of the parties to it in the land. —4 Paige, 58. If his object be a strict foreclosure, and not a sale, and there are prior mortgages to his own, the prayer of his bill should be that he may redeem such mortgages; and having done so, that they, together with his own mortgage, may be redeemed of him, or defendant be barred of the equity of redemption. Such a bill would be one of redemption and foreclosure—a bill of redemption as to the prior mortgages, and of foreclosure as to the equity of redemption. But, as with us a sale is nearly, if not always, ordered, it is the practice, instead of asking to

redeem prior mortgages, to pray a sale of the mortgaged premises, and that they be first paid out of the proceeds of the sale; or, if the holders of such mortgages should, for any good reason, object, that the mortgaged premises should be sold subject to their incumbrances.

If the cross-bill of Pierson, instead of being a bill to redeem of Baker as purchaser, was a bill to redeem the Moore mortgage only, it would not be sustained; for a subsequent mortgagee has no right to redeem a prior mortgage, unless it be in a suit to make his own mortgage available as against the mortgagor; and in such a proceeding, the mortgagor, and holders of all subsequent as well as prior incumbrances, should be parties. They should be parties; as each would be interested in, and have a right to be heard as to, the amount due on all prior mortgages; and that the purchaser under the decree might get a good title, and the rights of all parties be settled in one suit.

Baker states, in his bill, the Moore foreclosure, the parties thereto, and their several interests in the mortgaged premises, and his purchase at the sale under the decree. He thereby shows himself to be the owner of the equity of redemption, and of the several mortgages (so far as they relate to the land) of Moore, Turner, Ives, and Turbell. Instead of asking that the Moore and Turner mortgages only should be paid by Pierson, he might have asked that all four of the mortgages should be paid by him. Not having done so, and having filed his bill for a redemption by Pierson on the payment of a less sum, Pierson may redeem on the terms stated in the bill. It is not for the court to say he shall pay more than Baker asks.

The circuit judge asks, To whom shall the money be paid? I answer, to Baker, as there is no one else before the court claiming it. If any question should hereafter arise in regard to it between Baker and any of the parties to the Moore foreclosure, it will be time enough to decide such question when the court has the proper parties before it.

Baker *v.* Pierson.

Christiancy J.:

I am unable to agree in the result at which my brethren have arrived in these cases, from two opposite courses of reasoning. Two questions are reserved for our opinion. In the view which I have taken of this case, the second question reserved can not arise, as it will be entirely precluded by the answer to the first.

But the first, though enumerated as one, contains three distinct questions:

1st. Upon what terms can Pierson be allowed to redeem from Baker?

2d. What sums must he pay? and,

3d. To whom are the sums to be paid?

To give an intelligible answer to these questions it becomes necessary to discuss several other questions, upon which the answers to the questions asked must depend. But I propose to go into no discussion of this kind beyond what this necessity imposes.

As an essential preliminary, it becomes necessary to determine what was the effect of the prior foreclosure suit — first, as between the parties to that suit, and Baker, who purchased under the decree; and, secondly, as between those parties and Baker on one side, and Pierson, who was not a party, on the other.

Waiving, for the present, any separate consideration of the Turner mortgage, and treating Baker as a purchaser on his own account, as between him and the holders of the subsequent mortgages, who were made parties, the decree and sale in that suit were binding and conclusive, so long as that decree and sale should remain in force; and the liens of these subsequent mortgages were barred, and the equity of redemption under them foreclosed as against Baker, and all claiming the land under him, through that purchase.

But as between these subsequent mortgagees themselves,

or as between any of them and incumbrancers subsequent to them, the sale had no effect whatever, and left their rights in respect to the land, and to each other, as they stood before such foreclosure and sale.

Did the purchaser, by this sale, acquire the liens of the subsequent mortgages in the land? I think not. A mortgage is but a security for a debt; independent of the debt, the lien can have no existence in equity. The debt is the principal, the lien the accessory, which can no more exist without the debt than the shadow without the substance; nor can it be a subject of separate ownership by one, while the debt is owned by another, unless, perhaps, as a mere naked trust for the benefit of the holder of the debt.

If the purchaser at the foreclosure sale became entitled to the debts secured by these subsequent mortgages, then he may have obtained the liens of these mortgages, which were collateral to the debts; and he would be entitled to an assignment of any notes or bonds secured by the mortgages, and to enforce them for his own benefit against the makers. But certainly no one will claim any such effect from the sale. All must admit that the sale left these debts in the hands of the subsequent mortgagees, with the same right to resort to the personal liability of the mortgagor as they had before. As between them and the purchaser, their debts have been separated from the liens; in other words, as against him, while that sale remains in force, they have lost their liens upon the land — but he has not acquired them. He has acquired nothing more by the purchase than if there had been no subsequent liens. Such, then, I think, was the effect of the decree and sale, as between the purchaser and subsequent mortgagees who were parties to that suit.

What was the effect as between the purchaser and those parties, on one side, and Pierson, the fifth mortgagee, who was not a party, on the other? Precisely nothing. As he is not to be prejudiced by the decree or sale, and his right

to redeem, and all his claim to relief by cross-bill, are, and must be, founded upon the invalidity of those proceedings as against him, it must be equally clear that he can claim no benefit from thôse proceedings. He can not bind others by the proceedings in a suit by which he refuses to be bound. He can not claim under, and repudiate, these proceedings at the same time. To claim an advantage from the sale is to ratify the sale. He can not affirm it as to those incidents which might operate in his favor, and repudiate it as to those which operate to his prejudice. He must repudiate the whole, or affirm and submit to the whole. He can not be permitted to reap any advantage from the effect of that suit upon the parties to it holding the subsequent mortgages, without putting himself on equal terms with those parties, and consenting to be bound by the decree and sale.

As to Pierson, the prior mortgage to Moore is still unforeclosed, and that mortgage, and all the junior mortgages prior to his own, remain precisely as if no foreclosure or sale had ever taken place. He can redeem upon the same conditions, and the like terms in all respects, as if no suit had ever been instituted, and in no other way.

A change has taken place, it is true, in the equitable ownership of the Moore mortgage, which might, or might not, have happened without that suit. By the payment of the mortgage money, Baker has become the equitable owner, or equitable assignee, of the mortgage, in the same manner as if he had done the same without suit. But as between him and Pierson, Baker did not obtain the *land* by the *sale*, but the *mortgage* by the *payment* of the *money.* But this in no way affects Pierson's rights; it is immaterial to him whether that mortgage be owned by Moore or by Baker, so long as it remains but a mortgage, and he is permitted to redeem upon the same terms. His rights have not been affected by the suit to his advantage or his prejudice, nor have any of their rights in relation to him;

nor, in fact, could *their* rights, in *relation to him*, be affected without affecting *his*, in *relation to them.* He has a right to demand the redemption of the Moore mortgage, without redeeming the intermediate mortgages, if he could demand that right had no suit been instituted upon it, and not otherwise. But if he would redeem that mortgage, he must redeem it as a *mortgage*, and not as a *sale.* As a sale, it is not redeemable; as a mortgage, it is. If he redeem it as a mortgage, he will acquire it as a mortgage, and be subrogated to the rights of a mortgagee, and not as a purchaser of the land under it.

Doubtless, if he choose to buy out the purchaser without the aid of the court, it is perfectly competent for him to do so on any terms he shall be able to make, and to hold the land clear from the liens of all the subsequent mortgagees who were made parties. But, in this event, his own mortgage, if not strictly merged, would become valueless as a lien upon the land. He can not, by means of the fifth and last mortgage, demand the aid of a court of equity to compel the purchaser to sell to him. This would be to give him a preference over prior mortgagees, who, as between him and them, have superior equities. Courts of equity do not sit to compel people to make bargains with each other by bill and answer, nor to clothe bargains voluntarily made in such a manner with the sanction of a judicial proceeding. The most the court can do for him is to enable him to redeem it as a mortgage unforeclosed, and to place him in the position of a mortgagee.

Subrogation is not a legal right, but a mere equity, which must, where it has any existence, spring from the relative equities of the parties; and it will be granted, denied, modified, or controlled, in accordance with the real equities of all the parties to be affected by it.

Pierson may have equities sufficient to place him in the condition of a mortgagee under the Moore mortgage, if he redeems it; but he has none which would enable him to

BAKER v. PIERSON.

stand in the right of Baker, as purchaser. If, therefore, Pierson can redeem the first mortgage, without redeeming the intermediate mortgages, the holders of those mortgages may redeem from him in their turn, and that without paying his mortgage, which is last in date and least in equity. On the hypothesis that Pierson, the fifth mortgagee, would have a right to redeem the first mortgage, without redeeming all the intermediate mortgages, which would seem to be the hypothesis upon which the questions stated in the case are ,propounded, it might be important to determine whether Baker is to be considered as holding the Moore mortgage in his individual right, or in trust for the estate of Turner, the second mortgagee; and whether he stands substantially in the position of a second mortgagee purchasing in a prior mortgage to protect his own. If the latter be his position, he will be entitled to add the amount of the first mortgage to the second, and to require the redemption of both. Does it sufficiently appear that such is the position of Baker? The case finds but two facts from which to determine this question (for we can not notice mere evidence of facts not found). The two facts found are, 1st. That Baker was administrator of Turner, the second mortgagee; 2d. That the mortgaged premises were worth at least enough to pay both the Moore and Turner mortgages. Baker could not, therefore, be allowed to speculate out of the estate by purchasing the premises in his individual right, under the sale on the Moore mortgage, and then to set up that sale to cut off the Turner mortgage, which he held as administrator, even though we should treat it in any respect as a sale of the land. Had he attempted this with the funds of the estate, equity would decree him a trustee of the estate for the whole; if he purchased with his individual funds, he would still be treated as a trustee, for at least the amount of the Turner mortgage. It is not, therefore, material to the present case whether he used in the purchase the funds of the estate, or his own. The fact that

the deed was taken in his individual name would make him none the less a trustee, and can not, of itself, warrant an inference of any intention to use the purchase to the prejudice of the estate. The fair inference is that it was taken in his individual name to enable him to dispose of it, and convert it for the benefit of the estate, without the expense attending a probate sale under a license.—See *Little v. Lesix*, 5 *Mich.* 119. He would doubtless be at all times liable to account to the probate court in respect to the land or its proceeds. .

The necessary result is, I think, that the administrator stands, in all respects, substantially in the position of a second mortgagee who has purchased in a prior mortgage to protect his own; and no subsequent incumbrancer could redeem the prior mortgage without redeeming the second, of which, under such circumstances, it forms substantially a part. But whether he can file his bill as administrator, is a question upon which I give no opinion, as none has been asked.

But if it be admitted that Baker purchased on his own account, is Pierson entitled to redeem the Moore mortgage without redeeming all the mortgages subsequent to that, and prior to his own?

If I am correct in the conclusions at which I have already arrived, Pierson, with respect to all those prior mortgages, stands in the same position as if no suit had been instituted for the foreclosure of any of them. The question, therefore, is simply this: Can a fifth mortgagee sustain a bill in equity to redeem the first mortgage without redeeming the intermediate mortgages, which still remain a lien upon the land, paramount to his own? The only ground, I think, upon which a court of equity can be asked for a decree enabling a subsequent mortgagee to redeem a prior mortgage, is to enable such subsequent mortgagee to make the lien of his mortgage available as a means of satisfying his debt from the land. To this end, the court will

enable him, through the equity of his own mortgage, to ex-tinguish all equities of redemption in the land, that a good title may be conveyed. But, for this purpose, he must gener-ally, if not universally, pray for a foreclosure of his own mortgage in the same suit. If he can sustain a bill to re-deem the first, without the others, he may equally sustain a separate bill for the redemption of each; and, until all were foreclosed, his remedy would be incomplete.

If he redeem the first, leaving the second, third, and fourth outstanding, the second may immediately redeem it from him, and leave him where he stood before; the third may redeem both; the fourth may redeem the three; and the fifth may redeem them all. His redemption of the first, therefore, settles nothing, and leaves the whole matter still at large. If he can thus redeem the first without the others, the fourth may equally redeem the first or second without the third; or the third may redeem the first with-out the second, and with the same fruitless result; and there would be no end to litigation. Courts of equity seek to adjust in a single suit, as far as practicable, the equities of all parties having liens upon the land, to prevent a multiplicity of suits, to check fruitless litigation, and the multiplication of costs. Can such last mortgagee claim a right to obtain the first mortgage—to hold it as an invest-ment? The holder is as much entitled to keep it, as he is to demand it, for this purpose. Will he claim that, with this in his hands, he can foreclose and sell, and thus be able to purchase the property at a speculation sufficient to cover his own mortgage? The equity which would be required to sustain a bill to obtain the mortgage for this purpose is not visible; and if there be any such specula-tion to be made, the holder is as well entitled to it as he is. But if he had the mortgage, he could not tack it to his own, so as to give the latter a preference over the intermediate mortgages; and if he should foreclose and sell, to cut off these intermediate incumbrances, it would equally cut off his own.

For the reasons above stated, I think the questions propounded by the court below should be answered as follows:

1st. That Pierson can sustain a bill to redeem the Moore mortgage only on the terms of paying all the mortgages subsequent to that and prior to his own, without any deduction on account of any sum received upon any of them from the proceeds of the sale.

2d. That the sums to be paid by Pierson are the sums due (irrespective of what may have been received on any of them from the sale) on the four several mortgages prior to his own, with interest to the time of payment; but without any of the costs in the first foreclosure suit, to which he was not a party; and,

3d. That out of the aggregate amount of the sums thus to be paid, Baker should receive (subject to account to the Turner estate, as stated below) the amount of the Turner mortgage and interest, with the costs of the first foreclosure suit, and interest on those costs from the time they were paid.    That the balance of the aggregate amount should be paid to the respective owners of the mortgages executed to Turner, Ives, and Turbell, *pro rata*, according to the sums due on the same respectively; deducting, however, from any of them, and paying to Baker, such portion of any of the last named mortgages as may have been received on them respectively from the proceeds of the sale made to Baker.    This will return to Baker precisely the sum which he has paid, with interest, and make the holders of the Turner, Ives, and Turbell mortgages, represented in the original suit, pay the costs of that suit, which, as between them and Baker, the purchaser, they are equitably bound to pay.    Baker, as administrator, will receive the sum equitably due on the Turner mortgage; and if he used the funds of the estate in the purchase under the Moore mortgage, he will be accountable to the estate in the probate court for the amount so used and interest.

This is the result at which I have arrived, after a most careful investigation of the very peculiar questions involved in the case; and whatever error may be found in the course of reasoning adopted, this result precisely adjusts all the equities of all the parties. This, to my own mind, is a strong confirmation of the correctness of the process by which the result is reached. In a matter of general equity like this, I can not but suspect some fallacy in any process of reasoning, however logically accordant with technical rules, which leads to a result inconsistent with the just rights and real equities of the parties.

If it be said that this result will deprive Baker of the profits of his purchase, I reply, every purchaser at a foreclosure sale is bound, at his own risk, to ascertain whether the proper persons have been made parties to the suit (especially when the registry of deeds discloses the facts), as much as a purchaser at private sale is bound to notice any defect in the chain of a record title. The court of chancery does not undertake, on a foreclosure sale, to give a better title than a mortgagor had, nor to cut off the rights of subsequent incumbrancers who were not parties. By neglecting to notice a defect of title, a purchaser at private sale often loses both the land and his money. But, in the result at which I have arrived, the purchaser gets what, both at law and in equity, is deemed a full compensation,—his money and his interest.

The party seeking to redeem can complain of no hardship in being compelled to pay all the mortgages prior to his own, as this is exactly in accordance with the view he must have taken of his own rights, and the equities of all the parties, when he invested his money, or took his mortgage, with full knowledge of the prior mortgages. Nor can he complain of the failure of any of those prior mortgagees to redeem the first mortgage on the foreclosure suit; since, if they had done so, each of them would have acquired the mortgage redeemed by him, and Pierson would still have had the same amount to pay to redeem his own.

But, it may be said, the rule is well settled that the fore-closure and sale are binding and conclusive upon all the subsequent mortgagees who were made parties. This is true as between any of the parties to that suit on one side, and the purchaser, and all claiming under him through that sale, on the other, but not as to strangers to the suit. Pierson's right to redeem at all depends upon this distinction; for, if that suit is conclusive as between the parties to it, and the rest of the world, then Pierson is also bound, and his right of redemption cut off. And even as between the parties and the purchaser, the foreclosure and sale are only binding and conclusive while they remain in force, not after they are superseded, set aside, or vacated. The redemption by Pierson of the mortgage foreclosed, vacates and nullifies the foreclosure and sale, and the rights of the subsequent mortgagees in respect to the land are no longer affected.

The mortgage upon which the sale was had being re-deemed, the purchaser steps out, and his rights, and his relations to all the parties cease. The question is no longer between him and any of the parties to that suit, but between them and the person who has redeemed; who was no party to the suit, nor affected by it; who does not claim under that sale, but in opposition to it; whose only claim to relief consists in repudiating the sale, and treating it as a nullity, and whose right so to treat it grows out of a mortgage of later date than those he seeks to cut off by it, which, in equity and in date, precede his own.

The views which I have been compelled to take of these cases, if correct, may lead to the conclusion that all the necessary parties are not before the court, to enable it to make a proper decree. But as our opinion has not been asked upon this question, I have carefully avoided expressing any.

MARTIN Ch. J.:

Baker, as administrator of the estate of Turner, filed his

bill against Pierson, to compel him to pay the amount of the Moore mortgage, with interest, and the costs of foreclosure and sale, and also the amount of the Turner mortgage, with interest and costs, or be strictly foreclosed ; or, if Pierson should be allowed to redeem on payment of the Moore mortgage, with interest and costs, only, that then the Turner mortgage should be declared still subsisting and a lien upon the land, &c. The defendant, in his answer, denies that Baker bought or holds the land as administrator, or in trust, and claims to redeem by paying the amount which was bid by Baker at the sale under Moore's foreclosure, with interest, and files his cross - bill against Baker in his individual character, setting up the same facts, substantially, as in his answer, and insisting upon the same rights of redemption.

This, then, is substantially a suit for a strict foreclosure; or, in other words, that Pierson be debarred from setting up his claim under his mortgage, unless he redeem from the two mortgages within a limited time ; and the questions litigated are, what amount shall Pierson be required to pay, and to whom. Upon the first question, I have no doubt but that if the property had been purchased at the sale by a stranger to any of the mortgages, Pierson should only be required to pay the amount bid, with interest; while if Moore, or any one claiming under him, had purchased it in, he would have to pay the amount bid, if more than the mortgage, with interest; and, if less, then the amount of the mortgage, with interest and costs. But Baker does not appear to have purchased as a stranger. From all the facts in the case, I am satisfied that he acted in behalf of the Turner estate in making the purchase; while, if he had not, equity would hold him to have thus acted; for it was his duty to protect the estate, and he would not be permitted to purchase at the sale for the purposes of private speculation, and at the expense of the interests he was bound to protect from sacrifice or loss. In either case, he must be regarded as acting for the estate, and

the questions reserved are to be decided as arising be-
tween the estate and Pierson; and hence we are asked to
determine whether Pierson shall pay one or both mort-
gages, or only the bid, and whether to Baker in his in-
dividual character, or to him as administrator. Whether he
shall pay the amount of the first mortgage, with interest
and costs, or the bid, is immaterial, as the bid was more
than sufficient to satisfy the mortgage and costs, and the
purchaser has always the right to have repaid the amount
he paid, before he can be required to surrender the land.
As Baker purchased the land, and holds the title, for the
Turner estate, I have no doubt but that he may insist
upon the payment of the amount of the Turner mortgage
before he can be required to part with that title.    It is
true that, in a certain sense (and, had he not purchased,
in every sense) the lien of that mortgage is extinguished;
but so would be the lien of the first mortgage, and to the same
extent, if the first mortgagor had purchased in the land
for less than the amount of his decree. His lien would be
merged in his title. Yet, in such case, if a subsequent in-
cumbrancer sought to redeem, he would be required to pay
the full amount of the first mortgage, and interest and
costs, irrespective of the amount bid by the mortgagee at
the sale, unless the balance had been otherwise satisfied.
And why is this?    Because equity regards the debt as the
principal, and the land as the pledge; and, therefore, if by
forfeiture and foreclosure the title to the pledge be transfer-
red to the pledgee, no matter for what sum bid, the pledger
must still satisfy the principal, before he can ask a court
of equity to compel its restoration.    He that seeks equity
must do equity to him from whom he requires it; and it
is equity that the mortgagor, or those claiming under him,
shall not deprive the mortgagee of his pledge or security
without payment of all sums of money due him for which
the land was pledged. — See *Coote on Mort.* 391.    As be-
tween the mortgagor and mortgagee, I apprehend there
can be no doubt upon this question.

Now what was Turner's interest under his mortgage? Although in equity (and perhaps now at law) the "ancient estate in the land" remains in the mortgagor until after foreclosure, yet, to some extent, the common law yet characterizes it so that it is an estate upon condition as well—in fact, an anomalous estate, partaking, in many particulars, of the nature of one pledged, and in as many more, of one absolutely conveyed, subject to be destroyed by the performance of the conditions of its existence. Until after the foreclosure by Moore of his mortgage, the estate, whatever it was, may be conceded to have remained in the mortgagor; yet he had so far pledged and conveyed it that the equity of redemption alone remained in him. This only could be transferred by him, either by sale or mortgage. However his estate may be denominated, this, and the right to possession until after foreclosure, was most certainly all which was left to him. It follows that Turner, as the second mortgagee, had only a pledge or mortgage of that equity so long as Moore's mortgage remained a subsisting lien; but which might be transmuted into a mortgage of the land upon the satisfaction of the first. His right of redemption, then, was derivative, growing out of that of the mortgagor, and is to be determined by it. If the mortgagor could only redeem by paying the full amount of the Moore mortgage and costs, it follows that Turner could have no other or greater rights. Precisely to the same extent, and in strict analogy to this right of Moore, is that of Baker to insist that his (the Turner) debt should be paid by Pierson before he can be required to part with his title to the premises. He has acquired the pledge, and his principal remains unsatisfied; and there is no inequity in this. Had Turner taken an assignment of the Moore mortgage, no question could arise as to his or his administrator's right to insist upon the payment of both. By bidding in the land to protect this mortgage, Baker put himself in a situation where he may well insist

that he is entitled to the benefit of the rule which Moore could have insisted upon had he purchased,. viz. that before he can be called upon to part with his title, he must be satisfied of all his mortgage liens prior to that of the defendant.

The amount of the bid in this case was some ten dollars over the amount of the Moore mortgage, interest, and costs; and this excess was applied upon the Turner mortgage. Pierson should, therefore, pay to Baker the amount of both mortgages, with interest, and the costs of the former, and of this suit, with interest upon the costs paid upon the former suit; or, in other words, he should pay the amount of Baker's bid, and the amount of the Turner mortgage, deducting the amount applied upon it, with interest, and costs of this suit; and the payment should be made to Baker as administrator, and not to him in his own right. In this result, I concur with my brother Manning; and this, I think, disposes of all the questions submitted for our opinion—certainly of all which I think the circuit judge had a right to reserve under the issues.

But my brethren have gone further, and discussed the rights of Pierson to redeem; and I can not suffer that subject to pass in silence, lest I may be understood as concurring in the views of either of them.

I do not regard it as connected in any way with this case, and I shall therefore discuss it precisely as though it was a question between Pierson and Baker individually, throwing out of question Baker's rights under the Turner mortgage. The effect of a foreclosure and sale by the first mortgagee is to vest in the purchaser an absolute title, divested of the equity of redemption of the mortgagor, and of all subsequent incumbrancers who were made parties to the suit. The purchaser acquires this title, and no more. He does not acquire the liens of the incumbrancers who were parties, for he does not acquire their debts, and a lien separated from the debt is extinguished; nor can he

be regarded as holding their liens as a trustee, for that would render his purchase valueless, as the beneficiaries might compel him, if he were their trustee, to enforce such liens for their benefit. When there is a trust, there is an interest and a right in the *cestui que trust;* and to hold that the liens are held in trust, and yet that no interest or right exists in the *cestui que trust,* is a solecism.

The truth is, the title stands to the purchaser as though the subsequent incumbrances of the parties to the suit had never existed. But as to a subsequent incumbrancer *not* a party to the suit, such is not the fact. Not being a party to the foreclosure proceedings, his lien is not cut off. The mortgage was foreclosed as to all parties to the suit, but as to no one else. Such incumbrancer not having been made a party, had no opportunity given him to redeem, nor was he required to until decreed against. Now the decree against the mortgagor, and the subsequent incumbrancers, is, that they redeem, or the property be sold. They may redeem; and the mode in which they may do this is precisely as though a strict foreclosure were decreed; and they may secure this by the decree, if they desire, and make application to the court to have their rights and the order of redemption fixed. If they omit to redeem, their lien upon the land is extinguished, and they can only protect themselves at the sale, by taking care that the land is sold for enough to satisfy their debts. They may then bid to protect themselves, or any one to protect himself. If enough is bid to satisfy all the mortgage debts, the money will be thus appropriated; if to satisfy only a portion, the money will be applied, so far as it goes, to their satisfaction in the order of their priority. If any remain unsatisfied, either wholly or in part, the lien being extinguished, the remedy of the mortgagee is personal against the mortgagor, and can never re-attach to the land. Now, if Pierson had been made a

party, and had redeemed before sale, the opportunity having been given to the prior mortgagees, and they making default, he would have been compelled to pay only the amount of the complainant's demand, with costs; and he would have taken the land, divested of their liens: if the property went to sale, he might purchase for such sum as he could, and he would hold the title equally free from their incumbrances. Wherein is Pierson's right or obligation different, by reason of the omission by Moore to make him a party to the foreclosure suit? In my judgment, he stands in this suit precisely where he would have stood in the former had he been made a party, and the intermediate mortgagees had refused to redeem, or to bid at the sale. After the foreclosure, his mortgage stood as the only lien upon the land, the others having been fully extinguished. The mortgagor and the intermediate mortgagees had had their day in court, and had neglected and refused to redeem or protect their liens; and the decree and sale was, as to them, final and perpetual. But Pierson did not have his day in court, and the foreclosure of the others' rights could not, therefore, affect his; and he can redeem the land from the sale, if he desires and the purchaser will not pay his demand. Hence the necessity for this suit. Moore had foreclosed the other incumbrancers, and extinguished their liens. The purchaser now pursues Pierson for the same purpose, and the same consequences will result to him unless he redeems from the purchaser. This he offers to do, and this is the whole matter. From what, then, is he to redeem, and how? Most assuredly from the sale, and not from the Moore mortgage, for that and all included in the foreclosure proceedings were extinguished. The purchaser no more acquired the first mortgage than the others, for he did not acquire the demand which it secured; and, as I have already shown, the security can not be acquired independently of the principal. Baker, by the purchase, became

the owner of the land, and nothing more; the mortgage of Moore was satisfied, and the debt it secured discharged; and Pierson, except for the Turner mortgage, could redeem by paying to Baker the amount of his bid, with interest; for Baker would have no other or further claim. This follows from a consideration of the nature and effect of a foreclosure and sale, and a purchase under them, in every case where the first mortgagee is not the purchaser.

In *Broome v. Beers*, 6 *Conn*. 198, it was held, in a bill of foreclosure, that it was not necessary to make other mortgagees, whose equity of redemption had been foreclosed, parties to the suit. And why was this? Most clearly, because this equity was, by the foreclosure, extinguished. If by any possibility, or for any purpose, it could be revived — if any vitality for any purpose remained in their foreclosed liens — then such incumbrancers should have been made parties. But they were unnecessary parties, because they had had their day in court respecting this identical equity of redemption of the mortgagor, to which all the liens attached, and respecting the lands upon which they all existed, and their rights had been adjudicated, and by their suffering foreclosure, for ever extinguished. But the liens of others, not parties to the former foreclosure, were not thereby discharged; and in these the foreclosed incumbrancers had no longer any interest, nor could they assert any right or equity over, or respecting them. So it is held that, with respect to incumbrances subsequent to the complainant's mortgage, but prior to the filing of the bill, the decree will bind all those who are parties to the suit, but not the rest; and, consequently, a second or subsequent mortgagee, or other subsequent incumbrancers, *who are not parties to the bill*, may, on payment of the *first mortgage debt and costs*, redeem the first mortgage, after the decree obtained.—See *Coote on Mort*. 522. The fact that no notice of *lis pendens* was filed in the case of Moore's foreclosure, brings Pierson, under our statute, within this rule; and I

confess that I can deduce from it only this principle: That, by the foreclosure of a prior mortgage, the equities of all the defendants to the bill are extinguished, and not only as against the first mortgagee, but as against all subsequent mortgagees not made parties. It matters not that the defendants, or any of them, are intermediate incumbrancers; if their equity of redemption has been foreclosed, the rule will be the same; and the mortgagee not made a party may redeem upon precisely the same terms as though no such intermediate mortgages had ever existed. But if a mortgagee who is made party to the bill redeems the first mortgage, then the incumbrancer not made a party must redeem from him as well, as will appear from a consideration of the rights of the subsequent incumbrancers to redeem, where they are made parties. Now what are they? In *Benedict v. Gilman & Couch*, 4 *Paige*, 58, the right of the last mortgagee to redeem by paying the first mortgage, when the intermediate incumbrancer neglects or refuses to redeem, is clearly recognized. "If," says the Chancellor, "Gilman does not elect to redeem as the senior incumbrancer, the other defendant may redeem by paying what is due *to the complainant, in the same manner that the senior incumbrancer might have done.*" And what would have been the result had Gilman refused, and Couch, the last incumbrancer, had redeemed from the complainant? Most assuredly Gilman's lien would have been extinguished, and Couch would have acquired the land free of it. So, in Seaton's Forms of Decrees (*pp.* 157, 161), it is said, "When parties are entitled to successive rights of redemption, the usual form of decree is as follows: Suppose A to be the first mortgagee, and B, C, and D to have successive rights of redemption, the right of redeeming A is given in the first place to B, C, and D in succession, each in default of the other. Suppose B to redeem, the right of redeeming A and B is given in the next place to C and D in succession, each in default of the other. Suppose C to

redeem in either of the above cases, the right of redeeming A and C in the former, and A, B, and C in the latter, is lastly given to D. In default of redeeming, *each party* is foreclosed, if defendant." I am aware that these are familiar rules; and yet there seems a necessity for recurring to them in the discussion of this subject. Chancellor Kent, in *Haines v. Beach,* 3 *Johns. Ch.* 459, says: "The necessity for making the subsequent incumbrancers parties, or holding their rights unimpaired, is indispensable to justice in cases of decrees for sales; for otherwise the mortgagor would take the surplus money, or the cash value of the equity of redemption, and defeat entirely the liens of the subsequent creditors. But their rights can not be destroyed in this way, and the purchaser will take only a title *as against the parties to the suit,* and he can not set it up against the subsisting equity of those incumbrancers who are not parties."

Now, what follows from these rules and principles? Most clearly it follows that in every case the equities of the incumbrancers who were parties are cut off from the land, and, more, are extinguished. The purchaser, in the case of a sale, takes the land freed of all equities of the parties to the proceedings, and if there be no other incumbrancers, he takes it by an absolute title. If there be other incumbrancers not parties to the decree, he has thenceforth to deal with them alone, and, as their rights are reciprocal, they have to deal with him alone. If it be true that, as between such purchaser and the incumbrancers who were made parties, the debts of the latter have been separated from the liens, and such liens have been extinguished, how is it possible that, by attempting to perfect his title by foreclosing a still subsequent mortgagee, he revives and reattaches to the land the foreclosed liens? or how can such subsequent mortgagee's rights be less or different from what they would have been had he been made a party to the former suit, and all his prior incumbrancers had made default to redeem, or protect themselves at the sale? Yet

such must be the effect, if the subsequent mortgagee is required to redeem all the mortgages prior to his own, under a bill like that in the present case. As to the purchaser, his title confers upon him the right to foreclose the subsequent mortgagee. In such case, the value of his title is determined by the sum he paid for it, and he can only ask the party he seeks to foreclose to repay to him such amount; and the converse of the rule must be equally true, that such party can redeem from him by paying that sum. Their rights and liabilities are co-extensive, and precisely the same under a bill to foreclose or one to redeem. What is the effect of the doctrine that the purchaser foreclosing a subsequent unforeclosed mortgagee, or that the holder of such mortgage asking to redeem, must make all those whose liens have been extinguished, parties? It is, virtually, to annul the foreclosure under which the title was obtained, to revive the destroyed liens, and to open the whole decree. This would render a decree of foreclosure, in case a subsequent mortgage should exist, a senseless thing—a judgment of court meaning nothing; and the numberless decisions of judges and chancellors, that such decree bound all the parties to it, and that a purchaser of the premises acquired a title as against the parties to the suit, utter nonsense. The truth is, neither a bill to foreclose such subsequent mortgagee, nor a bill by the mortgagee to redeem, vacates, or annuls, or in any degree affects, the prior foreclosure and sale; nor does it revive the rights of any party to it. The proceeding, if a foreclosure is by a stranger to the former suit, unless the purchase was made by a party; in either event by a purchaser; and if for redemption, is against a purchaser, whether stranger or party. It is based, in either case, upon a title acquired after, although through, the decree; and it is that title only which is to be affected. In only one case can the holder of the title ask more than the amount he paid, with interest; and that is when the first mortgagee bids in the property for a less sum than his debt, or when a subse-

quent incumbrancer bids it in for the protection of his lien, as in the present case; and then, as I have already shown, a new equity supervenes.

Pierson, in the case before us, stands as a stranger to the former foreclosure and sale. These proceedings are not invalid as to him, for upon their validity depends all the purchaser's rights against him, and his rights to redeem from such purchaser; but as he was neither a party nor privy to them, he claims, beyond this, no rights dependent upon them. He neither claims any benefit from them, nor does he repudiate them. His claim is founded upon his mortgage alone. It is true that his right is of an equity of redemption, which, before the foreclosure and sale, was subordinate to those of his prior incumbrancers; but those have been extinguished, and it is no concern of his, nor does it affect his rights, whether they were extinguished by payment or by foreclosure. It is enough for him that they no longer exist. If he reaps any advantage from this, it is one arising from the voluntary act or omission of his prior mortgagees; and they can not complain if a benefit incidently results to him, nor require him to surrender it up before he can assert his independent rights. If his equity is subordinate to all prior equities, and must always remain so, if he can only enforce his by discharging them, why may not the mortgagor himself, if he has voluntarily paid them, demand re-payment before Pierson can redeem? The truth is, his lien is subordinate so long as prior liens exist, but no longer. The moment they are removed, whether by a decree of court, or the voluntary payment of the debts they secure, his lien becomes the primary incumbrance; and this is what the courts mean when they say that in case of a foreclosure and sale the purchaser takes a title as against all the parties to the suit, but not as against the subsisting equity of those incumbrancers who are not made parties. The prior mortgagees acquired no rights by the subsequent mortgage, nor were their rights

either increased or diminished by it. They acquired theirs through the mortgagor, and the foreclosure of his equity foreclosed theirs, for they had a day in court with him, and refused to protect them; such refusal was an abandonment of them, and they can never again assert them. It would not only be inequitable, but it would destroy the force and efficacy of a foreclosure, to permit them, subsequently, to set them up against a party whose equity was not foreclosed, or to claim that such party must first revive and then satisfy and extinguish liens which they had already suffered to be extinguished, before he can make his own available to the satisfaction of his debt. I must confess, that, to my mind, the very proposition involves an absurdity.

Nor are there any equities between him and these prior mortgagees to be adjusted. Pierson holds the only living equity, and there can be no adjustment of dead and living equities. Those of his prior incumbrancers were destroyed by the decree and sale, and if we hold that the living equity of Pierson is valueless, unless the dead equities of such incumbrancers be resuscitated and interposed between his mortgage and the title, we must hold that the foreclosure of Moore's mortgage was a useless ceremony of the law, and that the title of the purchaser is still incumbered with all the equities which existed against that of the mortgagor before the sale.

I have already determined how, in my judgment, Pierson may redeem in this case; and upon such redemption — as would be the case had the property been purchased by a stranger to the mortgages — I think he will hold all the title of the purchaser, divested of all equities, and that the prior mortgagees ought not to be, and could not be, made parties to any proceedings between him and Baker, as they have no rights to protect, nor equities to adjust.

CAMPBELL J. did not sit, having been of counsel in the case.

BAKER *v.* PIERSON.

*Ordered certified,* as the opinion of this court, that Pierson should be permitted to redeem on paying the amount of the Moore and Turner mortgages, with interest, and the costs of the former suit, and of these suits.