Bowen, J.
 

 That the proceedings in the action, subsequent to the death of Samuel Requa and prior to the order reviving it, as against his heirs, were irregular and erroneous cannot be denied, and I think they were void. As his interest in the premises (the subject matter of the partition suit) did not survive to the parties to the action, or to any of them, after his death, there was no one before the court to represent his interest, no one against whom judgment, affecting the interest which he had prior to his death, could be pronounced. The decretal order directing the sale was the final judgment of the court, so far as related to - the passing of the title to the premises. On the delivery of the deed by the master, the title that passed by the sale became perfect. When
 
 *188
 
 this judgment or decree was pronounced, the title which Samuel Requa had at the time of the commencement of the action had descended to and become vested in his heirs. They were not parties to the action, and consequently the judgment could not bind them; and as there was no one before the court representing their title or interest, I do not see how that could be bound or affected.
 

 When a defendant voluntarily transfers the subject of an action
 
 pendente lite-,
 
 the assignee takes title subject to the result of the litigation, and is bound thereby, but his interest is represented by his assignor, who remains a party to the action; but where the transfer is
 
 in inviium,
 
 or by operation of law, as in case of bankruptcy, the action becomes thereby defective, and the assignee or person who succeeds to the interest of the defendant must be brought before the court before any proceedings can be had in the action.
 
 (Russell
 
 v.
 
 Sharp,
 
 1
 
 Ves. & Bea.,
 
 500;
 
 Randall
 
 v.
 
 Mumford,
 
 18
 
 Ves.,
 
 424.)
 

 When a defendant in an equity action, whose title to the subject matter of the action does not survive to the other parties or to any of them, but passes to a third person, dies, the action thereby becomes defective, so that no proceeding can regularly be had therein which will affect the title or interest which the deceased party had at the time of his death.
 
 (Story’s Eq. PI.,
 
 §§
 
 329, 331,
 
 354, 369,
 
 and case« cited; Hinde’s Ch. Pr.,
 
 46.) Formerly, when such party to an equity action died, the only mode of bringing before the court the persons who succeeded to his interest was by a bill of revivor, or an original bill in the nature of a bill of revivor. By the eighteenth section of the act of April 12, 1813, entitled “ An act for the partition of lands,” and which was in force when this partition suit was commenced And prosecuted, it was provided that, if any party in any such suit should die, the proceedings, therein should not be thereby abated, but that such suit might be continued, on suggestion of the death, in case his interest should survive
 
 *189
 

 1)
 
 the surviving parties; and, in other cases, that such suit should or might be revived, by or against the heirs or devisees of the deceased party, in such manner and by such proceedings as the court might from time to time direct. (1
 
 R.
 
 X., 514.) If this provision changed the practice of the court in such cases', its effect was solely to allow a revival by a summary application to the court in the place of resorting to a bill of revivor. It fell far short of sanctioning a prosecution of an action to a final judgment or final decree, without bringing the heirs or devisees of the deceased before the court.
 

 The seventh section of the act in relation to the Court of Chancery, passed April 10th, 1813 (1
 
 R.
 
 X., 488), provided that no suit in Chancery should abate by the death of any one or more of the complainants or defendants, but should survive to the surviving parties, and proceed if the cause of action admitted of survivorship, the death being suggested; but if, by the death, other persons should become interested, then the action should abate only as to the deceased, and that the surviving parties might proceed without reviving the action, but that no order or decree of the court should bind any person not a party thereto. The section then provided that, in case the complainant should wish to bring the representatives of the deceased before the court, he might do so by order, to be served on the adverse clerk, &e.
 

 The provision, that no order or decree should bind any person not a party to the action, was general, and I see no reason why it was not applicable to actions in the Court of Chancery for partition. There is nothing in the act, in relation to partition, in the least inconsistent therewith. On the contrary, there is a provision in the latter act for bringing before the court persons succeeding to the rights of deceased parties.
 

 By the death of Samuel Requa, and by the proceedings had subsequently to his decease, the suit became, in effect,
 
 *190
 
 abated, as to him and as to his title to the premises at the time of his death; for although the statute declared that the suit should not abate by his death, yet the same statute required that his heirs should be substituted as parties; and the proceedings to a decree, and a sale of the premises under the decree, without such substitution, operated as a discontinuance of the action as to him.
 

 The general rule is, that judgments and decrees bind only parties and their privies. Samuel Requa, on ■ his death, ceased to be a party. He was not, in any sense, a party to the decree directing the sale, and there was no privity whatever, either in estate or otherwise, between his heirs and the surviving parties. By his death the suit became equally as defective as if he had not been made a party.
 

 Had the order reviving the action been made prior to the decree directing the sale, but subsequently to the other proceedings in the action after the death, and had the heirs appeared in the action without objecting to or moving to set aside such subsequent proceedings, they would doubtless have been bound by the decree. They would, in that case, have been parties thereto. But I do not see how the order, especially without being served upon them, could have had any retroactive effect. It was not in the nature of a
 
 scire facias,
 
 calling upon the heirs of Samuel Requa to show cause why they should not be bound by the decree which had already been pronounced. It was a substitute fo" a bill of revivor, and the payer of such bill always was, that the suit and proceedings' stand revived against the representatives of the deceased, and be in the same plight and condition they were in at the time the death happened; and such was the form of the order reviving the suit.
 
 (Story's Eq. PI.,
 
 § 386,
 
 note
 
 3 ;
 
 Rinde's Ch. Pr.,
 
 48; 2
 
 Barb. Ch. Pr.,
 
 536, 539, 544;
 
 Blake's Ch. Pr.,
 
 51.)
 

 In
 
 Washington Insurance Company
 
 v.
 
 Slee
 
 (2
 
 Paige,
 
 365), after a decree directing the sale of mortgaged premises by
 
 *191
 
 a master, naming Mm, and after the decree had been placed in the hands of the master for execution, the master and one of the defendants died, and it was held that the premises could not be sold under the decree until the action was revived against the representatives of the deceased defendant; and an order, substituting another master to sell the premises in the place of the one deceased, entered subsequently to the death of the defendant, and before revival, was set aside as improvidently granted-
 

 The chancellor, in this case, discusses the question whether the master named in the decree could have sold after the death of the defendant, the decree having been previously delivered to him, upon the ground that an execution at law, in the hands of a sheriff prior to an abatement by death, can be executed subsequently, and was of the opinion that a sale under such-circumstances could not be had. On that subject he says: “But it may be doubtful whether the purchaser would obtain a valid title under a master’s sale under similar circumstances, as the sale in most cases requires an order of confirmation before it becomes absolute. Such an order, though entered
 
 ex fane
 
 in the register’s office, is constructively the act of the court, as much so as the issuing of an execution by the clerk in a court of law. Where the decree cannot be carried into effect without some positive act of the court, supplying a lefect in the proceedings or decree, it is evident there must be a revivor, or some other proceedings in the nature of a revivor, or
 
 scire facias,
 
 before the benefit of the decree can be obtained.”
 
 Kelly
 
 v.
 
 Hooper’s Executors
 
 (3
 
 Yerg.,
 
 395), was an action of debt upon a decree, against the defendant’s testator, of a court of Mississippi. The testator died after the action was commenced and before the decree passed, and no notice was taken of the death upon the record, and it was held that the decree was void.
 
 (Garr
 
 v.
 
 Gomez,
 
 9
 
 Wend.,
 
 649 ; 2
 
 Pet. U. S. R.,
 
 482-487;
 
 Vroom
 
 v. Ditmas, 5
 
 Paige,
 
 528;
 
 Williams
 
 v.
 
 Kinder,
 
 4
 
 Ves., Sen.,
 
 387.)
 

 
 *192
 
 After the entry of the order of revivor, several applications were made to the court in the names of the heirs of Samuel Requa, with the other parties to the partition suit, in relation to the proceeds of the sale of the premises in question under the decree. It does not appear that any of the plaintiffs in this action signed any papers used on those applications, or in any manner personally appeared therein; and the attorney, who assumed to appear for the parties in those applications, testified on the trial that he was not authorized by any of the plaintiffs thus to appear. But assuming that the attorney was duly authorized to appear in those proceedings, os that the plaintiffs in this action were bound by his appearance, although without authority, I do not see how the defendant can be benefited thereby. He claims title to the premises in question, under the purchaser at the master’s sale, by virtue of the decree. The plaintiffs have title to an undivided interest in those premises, unless that title passed by the sale under the decree. If that title has passed, it so passed on the delivery of the master’s deed to the purchaser, which was long anterior to any of these applications. "Whatever title the purchaser has acquired was then perfect. Those applications and the proceedings under them could not have had the effect to pass the title.
 

 If the plaintiffs had received their due proportion of the proceeds of the sale, possibly they would have been estopped from denying that their title passed by the sale. At all events they could in that case be compelled, by an action brought against them for that purpose, either to convey their interest in the premises, or to refund the purchase money received by them. But it does not appear that they or any of them have received a dollar of the proceeds of the sale, or that any part thereof has been applied to their use. For aught that is shown, the whole proceeds remain undistributed; and if that be so, the defendant can, by a proper application to the court, on showing the facts, obfem
 
 *193
 
 that portion thereof which would have belonged to the plaintiffs, had they been parties to the partition suit.
 

 I think that the defendant failed to show on the trial that he or his grantor had acquired the title to the premises in question, which descended to the plaintiffs as the heirs of their father.
 

 When the defendant, on the trial of this case, proposed to i utroduce in evidence the proceedings in the partition suit, and on the applications relative to the proceeds of the sale, together with the master’s deed and the deed from the purchaser at the master’s sale to the defendant, the plaintiffs’ counsel objected generally to their being read in evidence, without specifying atiy grounds of the objection, and excepted to the decision of the court overruling the objection ; and the defendant’s counsel now claims that the exception was not well taken on account of the generality of the objection. In this, I think, he is right. The plaintiffs’ counsel should, on the trial, have specified wherein and in what respects the evidence was objectionable. A part of it, if offered separately, would, doubtless, have been competent," although, of itself, insufficient to constitute a defence. He should have pointed out to the court wherein or how the evidence was defective or incompetent.
 

 But after the testimony had been received, the court ruled, decided, and instructed the jury “ that the testimony produced by the defendant was sufficient to prevent the plaintiffs from recovering, and directed the jury to find a verdict for the defendant; and to this opinion and decision” the plaintiffs excepted. This ruling must have been had after the evidence had been fully considered, and by it the effect of the evidence was passed upon. If the evidence, for any cause, failed to show a complete defence, the exception to the ruling was well taken; and that it did thus fail I have attempted to show above.
 

 It is, however, claimed that this exception was too general, and, therefore, not available. The exception was as specific
 
 *194
 
 as the ruling or charge; the ruling was, in fact, the charge to the jury. In excepting to a charge, all that is necessary is to specify the legal proposition therein supposed to be objectionable. In this case the whole charge consisted of but a single legal proposition, and a general exception thereto was sufficient. It was unnecessary to state the reasons why the charge was, or was supposed to be, erroneous.
 

 The plaintiffs claimed title to but an undivided interest in the' premises, as tenants in common with the defendant, or with him and others, and on the trial they proved no ouster or denial of their rights by the defendant prior to the commencement of the action; and the defendant’s counsel claims that the plaintiffs were not, on that account, entitled to recover, and that the direction to the jury, to find for the defendant, was, therefore, correct. This direction, however, was based upon the ruling, “ that the testimony introduced by the defendant was sufficient to prevent the plaintiff from recovering.” The ruling and direction would have been the same had the plaintiffs proved an ouster. The ruling made such proofs wholly immaterial. Had the ruling on the effect of the defendant’s evidence been different, the plaintiffs might, and probably would, have proved an ouster, and the court would doubtless have received the evidence had it been offered. I think the exception to the ruling well taken, notwithstanding this defect of proof on the part of the plaintiffs.
 

 The judgment of the Supreme Court should be reversed and a new trial ordered.
 

 All the judges concurring,
 

 Judgment reversed and new trial ordered.