[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 340 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 341 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 342 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 343 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 344 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 345 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 346 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 347 
This cause has been twice in this court, and if the legal principles controlling any case are ever to be deemed settled, they ought to be in the present one. The facts of the case were uncontradicted and without complication; *Page 348 
and the principles of law applied to them neither intricate nor difficult to be understood.
It is conceded that Samuel Requa, the immediate ancestor of the plaintiffs, was the owner of an undivided sixth part of the premises claimed, prior to April, 1826, by descent from his brother, Isaac Requa. Samuel Requa died intestate on the 18th June, 1826, leaving nine children, his heirs-at-law, of whom the plaintiffs are, or represent, seven. As such they claim by descent, seven-ninths of one-sixth part of the lands in suit, being about twenty-three acres, and are entitled to the same unless the defendant or his grantor, acquired their title under a decree in a partition suit in chancery, in which the heirs of Isaac Requa were parties, commenced on the 18th April, 1826, to divide the lands that had descended to the latter. The defendant is the grantee of the premises of Steuben Swartwout, who claimed title thereto under the partition proceeding, and a master's deed; and the question between the parties is as to the effect of these proceedings, and this deed. [The learned judge here recapitulated the proceedings as before stated, and proceeded:]
On this precise state of facts, this court in 1857, when the cause was here for the first time, held that the proceedings in the partition suit, subsequent to the death of Samuel Requa, were absolutely void as against his heirs, and that all the title the defendant obtained was that which the surviving parties to the partition suit had at the time of the decree for sale. (Requa
v. Holmes, 16 N.Y., 193.) The question, therefore, as to the conclusiveness of the decree in this partition suit upon the rights of the plaintiffs, either by way of estopping them from claiming title as the heirs of Samuel Requa, or otherwise, was settled, and we see no reason for reopening the argument.
2. With the view of making the deed to Swartwout, the defendant's grantor under these partition proceedings, effectual to bar the rights of the plaintiffs as children of Samuel Requa, it was attempted to be shown that they had adopted, ratified and affirmed the partition sale, and all that the Court of Chancery did in the premises. It was proved that on the 16th *Page 349 
August, 1827, Jacob Requa (who was the brother and administrator of Isaac Requa), made a petition in the name of the heirs of Isaac and Samuel Requa, and as such administrator, in a suit that had been brought by one Mitchell against the heirs of Isaac Requa to recover a claim of $200 against the estate of the latter, and in which the proceeds of the partition sale had been enjoined, praying a reference as to the amount of Mitchell's claim, and that the injunction should be dissolved, and offering, as administrator, to pay the claim; and subsequently an order was made without opposition, for a deposit of $500 out of the proceeds of the partition sales, with the register in chancery to answer the decree which Mitchell should obtain. In October, 1827, at the instance of the complainants in the partition suit, an order was made ex parte that such suit stand revived against the heirs-at-law and widow of Samuel Requa. In July, 1829, an order was entered by the complainant's solicitor in the partition suit for the investment by the assistant register in chancery of the sum of $1,593.29 (being one-third of the amount of the partition sales) as a dower fund for the widow of Isaac Requa. This order was entered on filing a consent signed by the solicitor of one Van Wart, who had commenced a suit against the estate of Isaac Requa and one Dyckman, styling himself solicitor for Daniel Requa (a brother of Isaac) "and others of the defendants," and the consent and order were entitled in the suit of Van Wart, and also in the original partition suit, with the plaintiffs' names introduced as defendants. In May, 1841, at the instance of Jacob Requa, a petition was filed to have the proceeds of the partition sale brought into court. It was entitled in the partition suit, introducing the names of the original defendants and Samuel Requa's children in his place. None of the papers used on their application were signed by the plaintiffs, nor did they in any manner personally appear therein. In 1854, while the present action was pending in this court, the widow of Isaac Requa died; and on the 11th May, 1855, Jacob Requa, in his own name alone, presented a petition to the Supreme Court, entitled in the partition suit, for *Page 350 
the distribution of the dower fund, and praying an order of reference as to the persons entitled to it. An order for the reference was entered by his attorney, and the referee reported that the plaintiffs were each entitled to 3/144 parts of the fund. On the 24th October, 1855, an order was made by the Supreme Court for the payment of the fund accordingly. The plaintiffs gave to Jacob Requa a power of attorney to receive their shares, and on the 21st December, 1855, he, as their attorney, received the amount, being $31.02 each.
This was all the evidence tending to show an adoption or ratification of the partition proceedings and sale by the plaintiffs; and it has been decided by this court, as matter of law, on precisely the same evidence, that the facts adduced therefrom neither amounted to an estoppel of the plaintiffs, nor a ratification of the sale by them. On the first appeal to this court, all the evidence, except the receipt by the plaintiffs in 1855, of the shares of the dower fund of the widow of Isaac Requa, was contained in the bill of exceptions, and was held insufficient to estop the plaintiffs from claiming title, or to establish a ratification by them of the master's sale; and in 1861, when the case was again here, with the additional proof of the receipt of these shares of the dower fund, the same conclusion was reached. Assuming that the plaintiffs were bound by the appearance of the attorney on the applications in relation to the proceeds of the partition sale subsequent to the delivery of the master's deed to the defendant's grantor, it is difficult to perceive how the plaintiffs could be estopped from denying that their title passed by the sale. The sale was anterior to these applications; and whatever title Swartwout, the defendant's grantor, acquired, was then perfect. If the grantor of the defendant acquired title to the undivided interest of the plaintiffs in the premises, it passed on the delivery of the master's deed to him. Up to this time there had been no acts or declarations of the plaintiffs designed to influence the conduct of the defendant's grantor, or which did so influence it, and there never were. Any subsequent applications of the plaintiffs, in respect to the proceeds of the partition sales, *Page 351 
could not have had the effect to pass their title, or create anestoppel in pais. Nor did the receipt by the plaintiffs, under the circumstances, of their shares of the widow's fund in the partition suit, amount to an adoption and ratification by them of the partition proceedings and sale, nor an election on their part to accept the sum of $31.02 each, as and for their interest in the premises sold. If, with a full understanding of their rights, they deliberately intended to receive this part of the proceeds of the sale in full of their claim and interest in the premises, they ought, unquestionably, to be held to their election; for it would be inequitable for them to receive the proceeds of the sale, and still insist that the sale did not pass their title. But that was not this case. The money was received while the suit was pending in this court to enforce their claim to the lands, and they continued to prosecute it afterwards, and successfully, upon the facts then before the court. It is apparent that the plaintiff did not intend to adopt and ratify the partition sale, and take and receive their proceeds in lieu or substitution of their interest in, or claim to the premises, in respect to which this litigation was then pending. And this is the view that was taken of the question by this court when the case was here for the second time, in 1861. This case, as now presented, with the exception of that part which relates to the question of mesne profits, is, in every particular, the same as it was when before this court in 1861, on the second appeal; and all the questions now presented were then raised. The decision of the court was, that the plaintiffs were not estopped by the decree of sale in the partition suit, nor by subsequent acts of theirs in relation to the proceeds of such sale, from asserting their title to the premises; that the proceedings in partition were not sufficient in law to transfer their title; that they did not amount to a ratification of the master's sale by the plaintiffs; and that there was no case of an election, as the partition proceedings were not comprehensive enough to pass the plaintiffs' title. As no new facts were presented to vary this decision, the judge, at the circuit, was right in charging that the evidence introduced by the defendant *Page 352 
was insufficient to prevent the plaintiffs from recovering, and in directing the jury to find a verdict in their favor.
There were several exceptions taken in the progress of the trial to the admission and exclusion of evidence that require to be briefly noticed:
1. After proving the death of Clara Requa, an original plaintiff in the suit, without issue, which occurred in December, 1852, and leaving her surviving eight brothers and sisters, six of whom were original plaintiffs, and Jacob Requa and Amy Wiltsie, who were not plaintiffs, the counsel for the plaintiffs offered in evidence two deeds, dated 28th June, 1859, one from Jacob Requa to Nathaniel Requa (original plaintiff), and another from Amy Wiltsie to Gloade Requa (also another original plaintiff), conveying the interest in the premises of Jacob and Amy, which they were seised of or entitled to as heirs-at-law of Clara Requa. The defendants objected to the deeds being received in evidence, on the ground that they were void, the premises being held adversely at their date. The objection was not a valid one. There was no adverse possession so as to avoid the deeds under the champerty act.
2. Various objections were taken to the admission or rejection of evidence applicable to the question of mesne profits; but these became immaterial, as the judge charged and directed the jury that the plaintiffs were not entitled to recover any thing for mesne profits, and on that question the judgment was in favor of the defendant.
3. One of the grounds urged for a nonsuit was, that the plaintiffs had not proved any ouster of themselves as tenants in common. This was sufficiently proved by the production of the conveyance from Swartwout to the defendant, containing a covenant of seisin, and with warranty of title of the whole lands, and by proof of the entry and conduct of Swartwout's grantees direct and subsequent.
4. The defendant offered to prove that Swartwout, and the successive purchasers under him, including the defendant, made improvements, enhancing the actual value of the premises, with the knowledge of the plaintiffs, and without any *Page 353 
objection by them; but the judge refused to admit the evidence. It is not perceived how it was material. Their purchasers all took title in law to certain shares of the land, but not of the shares claimed by the plaintiffs. They improved at their peril, as they had taken their title. As tenants in common with the plaintiffs, they had a right to improve the property as they thought fit; and, having entered in exclusion of the plaintiffs' claims, they cannot set up that entry, and their acts under it, to defeat the plaintiffs' title. The fact that the plaintiffs did not forbid them, established no estoppel of the former claiming title to the lands, and no equitable defence to the action.
5. A notice in the name and on behalf of the plaintiffs, was served on the defendant before the trial, notifying him that the money received as their shares of the dower fund of the widow of Isaac Requa, was not received with any intent or purpose to ratify or adopt any sale of the lands in the partition suit, nor with any understanding of any such supposed effect, and offering to refund and replace the sums received with interest. On the trial, the plaintiffs' counsel read this notice in evidence, and offered to pay the money into court to abide its order. The defendant's counsel objected to the admission of the notice, as well as to the money being received, on the ground that it was too late to make a proposition like that on the trial; but the court overruled the objection and directed that the money be deposited with the clerk of the court to the credit of the action, and that it be invested in the New York Life Insurance and Trust Company, to abide the further order of the court; to which decision and direction the defendant excepted. The plaintiffs then deposited with the clerk of the court the sum of $350. I see no valid objection to this proceeding to be urged by the defendant. The defendant, claiming an equitable defence, by reason of a receipt on behalf of the plaintiffs, of money proceeding from the defendant's predecessor in title, to which the plaintiffs were not entitled, the payment back of the money into court, was not improper. The permitting of it by the court could not *Page 354 
prejudice the defendant, if he had no connection with it; and if he had, it was proper to be done.
The judgment of the Supreme Court should be affirmed.