## Noyes L. Avery, Assignee in Bankruptcy of Alexander Blake v. Martin Ryerson and others.

*Bill to redeem: Assignee in bankruptcy: Permission of bankruptcy court.* An objection to a bill to redeem by an assignee in bankruptcy, that it is not shown that the assignee obtained permission to bring the suit from the court of bankruptcy, if of any force in any event, will not be considered unless it is pleaded.

*Foreclosure: Assignee in bankruptcy of subsequent mortgagee: Estoppel.* An assignee in bankruptcy holding a subsequent mortgage, having filed a bill to redeem from a prior mortgage which had been foreclosed in chancery by proceedings to which he was not made a party, the fact that in the course of negotiations for an amicable redemption, before filing his bill, he had received from the mortgagor an order for the surplus moneys on the foreclosure sale, which had been paid into court, and had passed it to the solicitor of the purchaser at such sale, to enable him to get back the money, cannot be urged against him as evidence of his acquiescence in the sale as having cut off his subsequent mortgage; at least not where no such ground of defense is set up in the answer.

AVERY *v.* RYERSON.

*Subsequent mortgage: Right of redemption: Foreclosure: Parties.* The right of the holder of a subsequent mortgage to redeem from a prior mortgage is not cut off or affected by a foreclosure decree and sale under the prior mortgage, where at the time of such decree and sale no party to the foreclosure suit in any way represented or had any right or interest in such subsequent mortgage.

*Foreclosure: Assignee in bankruptcy of subsequent mortgagee: Death: Abatement.* Where an assignee in bankruptcy of a subsequent mortgagee, who has been made a party defendant to a foreclosure bill, dies before decree, the right to bind such subsequent mortgage by the decree and sale, thereby terminates as completely as if a sole administrator of the subsequent mortgagee had in like manner been made such party and afterwards died.

*Foreclosures: Subsequent mortgage: Decree: Sale: Purchaser: Redemption.* Where a chancery foreclosure to which an assignee in bankruptcy of a subsequent mortgagee has been made a party, had proceeded to decree and sale after the death of such assignee, without bringing in his successor, or any one else who represented such subsequent mortgage, it was held, in a suit brought by the successor of such assignee to redeem, that his equities were superior to those of the purchaser at the foreclosure sale, and a decree for redemption was granted.

*Foreclosure: Subsequent mortgagee: Assignee in bankruptcy: Parties: Permission of bankruptcy court.* Whether where an assignee in bankruptcy has proceeded to decree in the federal court on a bill to foreclose a subsequent mortgage, it is competent, without permission of the bankruptcy court, to make him a defendant to a bill to foreclose a prior mortgage, so as thereby to affect his rights under the subsequent mortgage:— *Quære?*

*Foreclosure: Subsequent mortgage: Assignee in bankruptcy: Averment.* Whether if it be competent under such circumstances thus without such permission to make the assignee in bankruptcy a party defendant and thereby conclude his rights under the subsequent mortgage, an averment simply that as assignee of A B (the subsequent mortgagee) he had or claimed to have rights and interests in the premises, or some part thereof, as subsequent incumbrancer or otherwise, is sufficient:—*Quære?*

*Heard June 16. Decided June 21.*

Appeal in Chancery from Newaygo Circuit.

*Standish, Fuller & Standish,* for complainant.

*Albert G. Day* and *Gray & Luton,* for defendant Courtright.

GRAVES, J:

On October 13, 1866, Elihu Cooper mortgaged the southeast quarter of section two, town eleven north, range thirteen west, to the defendants, Martin Ryerson, Charles T. Hills, Henry H. Getty, and one Ezra Stevens, for four hun-

dred dollars of purchase money, payable in two equal annual payments. The mortgagees composed the firm of Ryerson, Hills & Co., and Stevens afterwards died.

About a year and a half later, and on the 28th of May, 1868, Cooper made a second mortgage to Alexander Blake for thirteen hundred and ninety-nine dollars, payable one-half in two, and one-half in three years. Both mortgages were accompanied by Cooper's notes, and both were duly recorded. Shortly after this last mortgage was given, and on the 10th of June, 1868, Blake was adjudged a bankrupt in the district court at Grand Rapids, on the petition of his creditors, and Wilder D. Foster was made official assignee, and Blake's estate, including this last mortgage, was duly assigned.

In January, 1871, Mr. Foster, as official assignee, took steps in the circuit court of the United States to foreclose this mortgage. He filed a bill therefor against Cooper and wife, and finally, and on the 15th of June, 1871, a decree and order of sale were passed. In this proceeding there was found due on the mortgage and notes the sum of sixteen hundred ninety-three dollars and forty cents, and sale was ordered to be made at any time after July 24th, 1871.

No further steps have been taken in the case.

In this state of things Ryerson, Hills & Getty, as surviving members of the firm of Ryerson, Hills & Co., afterwards, and on April 16, 1873, filed their bill in the circuit court for the county of Newaygo in chancery to foreclose the first mortgage, and Wilder D. Foster was made a defendant under an allegation that "as assignee of Alexander Blake he had, or claimed to have, rights and interests in the premises," "or in some part or parts thereof, as subsequent purchaser, incumbrancer, or otherwise."

The bill showed nothing further respecting Foster's relation to the subject matter of the suit. The subpœna was personally served upon him, and on the 15th of September, 1873, the bill was taken as confessed for want of appearance and an order of reference was entered.

Five days thereafter, that is, on the 20th of September, 1873, Mr. Foster died, and on the 15th of October following, a final decree was made for a sale of the land at any time after April 17, 1874.

The amount reported due by the commissioner was two hundred and ninety-eight dollars and eight cents, being thirty-five dollars too much. On the 20th of April, 1874, the premises were sold under the decree to the defendant Courtright for eight hundred and five dollars, and the commissioner gave his deed on the same day. The surplus money was paid into court. The decree was not enrolled, or the sale confirmed, until nine days later.

In less than two months after Mr. Foster's death, and less than one after final decree, and less than seven after the bill was filed, and when it was necessary to wait more than five months before a sale could lawfully occur, the complainant in this cause was appointed assignee in the place of Mr. Foster, and he has remained such assignee since that time.

Notwithstanding the amplitude of the time, Ryerson & Co. made no pause in the prosecution of their foreclosure on account of the death of Mr. Foster and the temporary vacancy in the assigneeship, and took no notice whatever of these occurrences and the consequent want of a defendant to represent the Blake mortgage. On the contrary, they pressed the case and conducted it, as though nothing had happened, to computation, decree and sale.

Complainant Avery was ignorant of the foreclosure proceedings until the day succeeding the sale to Courtright, and having then learned about it, he went at once, in company with Cooper, the mortgagor, to Courtright, and proposed to redeem and offered to repay him, but the offer was refused. Cooper offered in addition a quantity of wood, and still Courtright persisted in his refusal. Under these circumstances, in less than three weeks after the sale, namely, May 8, 1874, Avery filed this bill in the court below to redeem.

The defendant Courtright answered, and the other defendants allowed the bill to be taken as confessed.

Proofs having been taken, the court below dismissed the bill on final hearing.

Whether in view of Foster's situation as official assignee in bankruptcy, and of the proceedings had in the federal court to foreclose the Blake mortgage, it was competent without permission of the bankruptcy court to make him a defendant in the suit brought by Ryerson and others in the court below, so as to affect the right under the Blake mortgage, we shall not inquire, because we do not think the question is of any practical importance in this controversy. And for the same reason we shall not pause to ascertain whether the bill of Ryerson and others was aptly framed in any event to bind through Foster the right based on the Blake mortgage.

The objection now made, that Avery is not shown to have obtained permission to bring this suit from the court of bankruptcy, if of any force in theory (*1 Dan. Ch. P., 311, 4 Am. ed.*), is sufficiently answered by the circumstance that it has not been pleaded in any way.

By the sale to Courtright a sum was obtained much larger than was necessary to satisfy the debts and costs, as determined in that case, and as before stated, the balance was paid into court. And it appears that Cooper, the mortgagor, gave his order on the register, for this surplus, to Avery, but that Avery did not use it. On the contrary, he passed it to Courtright's solicitor, and the evidence is pretty plain that this occurred in an attempt to bring about a redemption by negotiation, which failed. There is not the least reason for saying that Avery received this order with any idea of taking the surplus money as an act of acquiescence in Courtright's claim that his purchase had cut off the Blake mortgage. The fact has no such meaning. Avery does not appear to have yielded at any time to Courtright's position. He was insisting upon the right to redeem, and he was trying to bring it about without litigation, and he

manifestly got the order to enable him to get the money back to Courtright in case of amicable redemption.

Moreover, it is to be noticed that the answer asserted no such ground of defense.

It follows that the point urged by counsel, that Avery's acceptance of this order concluded him, is quite untenable.

It seems to the court that on the case exhibited the complainant's equity is clear. The value of the land was and is much greater than the price Courtright paid, and he is seeking to make a profit, and complainant to avert a loss on the part of Blake's estate. The Blake mortgage, as before mentioned, was recorded, and it remains an incumbrance and foundation for redemption unless cut off by the decree and sale in the case of Ryerson and others. It was not cut off thereby, because when the decree and sale were made respectively, no party to the suit had, or appeared, or was supposed to have, any right or interest in it or power or control over it.—*Brown v. Thompson, 29 Mich., 72; Cooper v. Martin, 1 Dana, 25; Haines v. Beach, 3 J. C., 459; Bell v. The Mayor, 10 Paige, 49; Watson v. Spence, 20 Wend., 260; Fuller v. Van Geesen, 4 Hill, 171; Brainard v. Cooper, 6 Seld., 356; Requa v. Holmes, 16 N. Y., 193; S. C., 26 N. Y., 338.*

Mr. Foster having died before decree, the right to bind the Blake mortgage by the action dropped, and the after proceedings were of no force against it.

If Foster had been sole administrator of Blake's estate, and in that character had been joined as defendant, no one would have questioned the effect of his death.

Every one would concede that the decree made after his death could not operate against the mortgage belonging to the estate he represented. The principle is the same here. Ryerson and others were not compelled to join him as defendant at all. It is not a question of jurisdiction as against the mortgagor or owner of the equity of redemption, or a question whether the decree can be impeached. But the point is, whether the decree can bind unrepresented in-

terests.    Ryerson and others could foreclose Cooper without
being bound to include subsequent incumbrancers.    They
might have left out the representative of the Blake mort-
gage in the first place, or they might have done so after-
wards, by amendment of the bill, or by voluntary dismissal
as to him, and there was no inherent and vital objection to
their proceeding after his death without a defendant in his
place, if satisfied to leave the case so shaped that it could
only reach Cooper's equity of redemption and could not
affect the Blake mortgage.    But the suit could not be made
equally to affect that mortgage whether there was or was
not a party representing it.    A decree given when there
was no one in the cause in any way representing the Blake
mortgage, could not affect that mortgage.    If Ryerson and
his co-complainants had purchased at the foreclosure sale it
would hardly be thought admissible to argue that they had
acquired a title which cut off this second incumbrance.
And yet, in view of the principle which really governs the
question, Courtright's position gives him no higher right to
make such a claim than they would have had.    When Mr.
Foster died, the representation of the Blake mortgage fell
into abeyance and remained so until Avery's appointment.
The suit became defective in respect to that incumbrance,
and this defect, under the actual circumstances, was not
susceptible of cure prior to that appointment.    But beyond
this interest there was no abatement.

It is not unworthy of notice that Ryerson & Co. were
not caused to encounter any special difficulties in the prose-
cution of their foreclosure for the want of some one to rep-
resent the Blake mortgage.    They were not placed in a
situation where they must either proceed without a represent-
ative of that interest as a party or unduly delay obtain-
ment of the fruits of their action.    The interval between
Mr. Foster's death and Avery's appointment was short, and
not long enough to hinder a sale at the earliest moment
permitted by law.

Had it been otherwise, however, we cannot doubt but

that an application to the bankruptcy court for an appointment would have been successful. In conclusion, we find that the Blake mortgage has not been cut off, and it appears to the court that complainant, as the representative of the right resting upon it, has, in coming forward to redeem, an equity paramount and superior to that of Mr. Courtright.

Several topics alluded to and authorities cited in the elaborate brief of Mr. Courtright's counsel are not specially noticed. They do not appear to be strictly pertinent to the essential ground of the controversy.

The decree below will be reversed, with the costs of both courts, and a decree for redemption will be entered in proper form hereafter in accordance with the principles of this opinion.

The other Justices concurred.