## SWARTHOUT *v.* SHIELDS.

1. FRAUDS, STATUTE OF—PRIORITY—SALE—REDEMPTION.

The purchaser of land which is subject to a mortgage who assumes payment of the mortgage debt may agree not only to relieve the grantor of the incumbrance but also charge himself as against the mortgagee with personal responsibility; the agreement may rest in parol and be valid under the statute of frauds.

2. EVIDENCE — PAROL EVIDENCE RULE — ASSUMPTION OF MORTGAGE DEBT.

Testimony in a suit to foreclose a mortgage that as a part of the consideration for the purchase of lands the grantee in the deed assumed and agreed to pay two outstanding mortgages was not improperly received and considered, although the deed did not purport to contain the agreement and merely excepted from the covenants the incumbrances in question.

3. MORTGAGES — CONTRACTS — PROMISE TO PAY—WHEN TITLE DOES
   NOT INURE TO MORTGAGEE.

Defendant purchased certain lands by a deed of convey-
ance which excepted two mortgages from the covenants.
He permitted the senior mortgage to be foreclosed and
purchased the interest after the expiration of the period
of redemption. Complainant commenced to foreclose the
second mortgage, claiming that the purchase should inure
to her benefit, because defendant had agreed as part
of the price paid for the real estate to satisfy both in-
cumbrances. *Held,* that the interest obtained did not
inure to her benefit.

Appeal from Livingston; Miner, J. Submitted
April 21, 1914. (Docket No. 95.) Decided April 19,
1915. Rehearing denied December 22, 1915.

Bill by Melinda Swarthout against William H.
Shields and others to foreclose a mortgage. From a
decree for the complainant, defendants Shields ap-
peal. Reversed.

*George F. MacNeal,* for complainant.

*J. A. Tillson,* for defendant Hoyt.

*William P. Van Winkle,* for defendants Shields.

BIRD, J. These proceedings were begun by com-
plainant to foreclose a mortgage for $700, which was
a lien on certain premises situate in Tyrone township,
Livingston county, and described as:

"A piece of land commencing 20 rods south of the
northwest corner of section 27; thence south 46 2/3
rods; thence east 240 rods; thence north 66 2/3 rods;
thence west 160 rods; thence south 20 rods; thence
west 80 rods to the place of beginning."

The premises were owned by Ambrose Hoyt, and
there were two mortgages thereon one for $1,750, and
another for $700, which was a second mortgage and
is the one involved in this controversy. With these
two incumbrances thereon, Hoyt, on the 25th day of

March, 1910, sold the premises to defendant Shields for an agreed consideration of $3,200. The consideration was made up of the following items: $1,750 mortgage, with accrued interest; $700 mortgage, with accrued interest; $100 to the tenant on the farm; $64 to a real estate broker; and $140 in cash to Hoyt. Shields paid nothing on either the principal or interest, and the first mortgage was foreclosed by advertisement by the Chamberlain estate, and bid in by the executors. The equity of redemption expired April 13, 1912. In October, 1912, six months later, defendants Shields purchased the premises from the executors of the estate for $2,401.41, and thereafter defendants Shields refused to recognize complainant's mortgage as having any force or effect. In June, 1913, complainant filed this bill to foreclose her mortgage. The theory of the complainant was that by the covenants in the mortgage it was obligatory on both Hoyt and Shields to pay the mortgage; that, having made default therein, and Shields afterwards having acquired title thereto from another source, he was estopped from denying that the purchase of such title inured to the benefit of the complainant. The chancellor took this view of the case, and granted a decree of foreclosure and a decree for deficiency against both Hoyt and Shields.

The propositions argued by counsel for defendants Shields are: *First,* that the verbal promise to pay the mortgage would not bind the defendants Shields; *second,* that they now hold title to the land in question by warranty deed from the executor of the estate of Ezra Chamberlain, deceased, and that this title is paramount to and free and clear from the mortgage claim of the complainant; and, *third,* that in no case can they be held personally liable because the complainant's bill does not ask for a personal decree as against them.

1. The deed from Hoyt to Shields did not recite either that the grantee assumed the mortgages or that he agreed to pay them. In warranting the title, however, the mortgages were excepted, but no further reference was made to them in the deed. It is the claim of Hoyt that the promise of Shields to pay the mortgage was a part of the consideration for the deed, and reliance is had upon the verbal promise of Shields to pay the mortgages and the accrued interest thereon. It is objected that this proof was not competent to establish the fact. We think it was. The testimony is convincing that the promise to make payment of the mortgages was a part of the consideration of the deed. Under such circumstances the general rule has been stated to be that:

"The purchaser of mortgaged land may assume the payment of the mortgage debt in such a manner as not only to relieve the grantor of the incumbrance, but also to make himself liable to the mortgagee, by any contract or agreement on his part which distinctly manifests his consent and intention to charge himself with such personal responsibility, * * * and the agreement may even rest wholly in parol, and in that case is not considered as being within the statute of frauds." 27 Cyc. p. 1345; *Strohauer* v. *Voltz,* 42 Mich. 444 (4 N. W. 161).

Our conclusion is that it was competent to show by parol testimony that the promise to pay these mortgages was a part of the consideration for the conveyance.

2. We do not think it can be said that the title purchased by Shields from the Chamberlain estate inured to the benefit of complainant's mortgage. The proceeding by which the mortgagors' title is cut off is statutory and certain. It provides that:

"Unless the premises described in such deed shall be redeemed within the time limited for such redemption, as hereinafter provided, such deed shall thereupon become operative, and shall vest in the grantee

therein named, his heirs or assigns, all the right, title, and interest which the mortgagor had at the time of the execution of the mortgage, or at any time thereafter." 3 Comp. Laws, § 11142.

Under the proceedings had to foreclose the first mortgage on and after April 13th, the title of Shields was extinguished, and this necessarily carried with it the mortgage lien of complainant, and thereafter the title vested in the purchaser. If this be true, how and when and by what process was complainant's lien revived or a new one created for her? It is argued that the situation is analogous to the buying of a tax title by a cotenant; that in such case the purchase of a tax title by one cotenant inures to the benefit of his cotenant. The difficulty with this argument is that the relations of the parties to this proceeding are not analogous to those existing between cotenants. The rule that the purchase of a tax title by one cotenant inures to the benefit of his cotenant arises out of the rules of law governing the relation of cotenancy. Complainant is not a cotenant with either Hoyt or Shields, but the relation is that of debtor and creditor, and therefore adverse.

In the present case the Chamberlain estate was clearly within its statutory rights in foreclosing its mortgage, and after the sale Shields and complainant were given a year in which to redeem and protect their respective interests. Neither of them saw fit to embrace this privilege extended to them by the statute, with the result that the title interest of Shields and the mortgage lien of complainant were extinguished, and the Chamberlain estate became the owner thereof. Under such circumstances the theory of the complainant cannot be sustained. Some claim of bad faith and collusion is made against Shields and the executors of the Chamberlain estate, but we think the charges are not sustained by the proofs.

The decree of the trial court will be reversed, and the bill dismissed, with costs of both courts to appellants.

BROOKE, C. J., and MCALVAY, KUHN, STONE, OSTRANDER, MOORE, and STEERE, JJ., concurred.