NATIONAL ACCEPTANCE COMPANY OF AMERICA, a Delaware corporation, Plaintiff and Cross Defendant,

v.

Henry C. MARDIGIAN, Barbara J. Mardigian, Stephen Dombek and Annie Dombek, Defendants and Cross Defendants,

and

M.B.M. Fabricators, Inc. and National Bank of Wyandotte, a Federal banking corporation, Defendants and Cross Plaintiffs.

Civ. A. No. 26806.

United States District Court
E. D. Michigan, S. D.

Sept. 30, 1966.

Edward M. Miller, Levin, Levin, Garvett & Dill, Detroit, Mich., and Schimberg, Greenberger, Krauss & Jacobs, Chicago, Ill., for plaintiff.

John E. MacDonald, Tinkham, Snyder & MacDonald, Wayne, Mich., for Stephen Dombek and Annie Dombek.

John P. Babcock, Babcock & Babcock, Detroit, Mich., for Henry C. Mardigian and Barbara J. Mardigian.

Frank I. Kennedy, Detroit, Mich., Richard W. Look, Wyandotte, Mich., of counsel, for M.B.M. Fabricators, Inc. and National Bank of Wyandotte.

## OPINION

FREEMAN, District Judge.

On October 16, 1961, defendant Union Wrecking Company, Inc. (Union) signed an installment negotiable note payable to the order of plaintiff, National Acceptance Company (N.A.C.), in the amount of $250,000. The last installment was due on April 20, 1964. This note was secured by a mortgage upon certain property in Romulus Township, Wayne County, Michigan (herein referred to as the Romulus property). In addition, Henry and Barbara Mardigian at the same time guaranteed payment of the Union debt, and to secure this guaranty the Mardigians signed another promissory note, also payable to the order of N.A.C., for the sum of $50,000.[1] This second note was itself secured by a mortgage on certain residential property in Dearborn, Michigan (herein designated the Dearborn property). It appears from the complaint that the mortgage on the Dearborn property was recorded on October 16, 1961, and that the mortgage on the Romulus tract was recorded on October 25, 1961.

Union is now bankrupt;[2] and, according to the complaint some $162,000 is still owing to plaintiff—an amount that it now seeks to collect by foreclosing on its mortgages on both the Romulus and the Dearborn properties.

This matter is now before the Court on motions of defendants for partial summary judgment. These motions involve only the Romulus property. They arise largely because of complications attributable to the fact that plaintiff's mortgage on this land, when obtained, was only a second mortgage. More precisely, the instant questions stem from the additional facts that the senior mortgagees, defendants Dombek and wife, had begun foreclosure proceedings in the state court in early June of 1961—at least four months before plaintiff obtained and recorded its mortgage—and that plaintiff never became a party to that foreclosure litigation.

---

1. Plaintiff originally joined the Mardigians in this action and sought a judgment against them on the guaranty. However, plaintiff later consented to their dismissal with prejudice. The Mardigians are still cross defendants in claims unrelated to these motions.

2. Union's bankruptcy trustee was originally made a party in the present action. However, he was dismissed when it appeared that, pursuant to an order of the bankruptcy court, he had disclaimed any interest in the Romulus property.

The Dombeks purchased the Romulus property when it was finally sold in September, 1963, at a judicial sale pursuant to a decree entered in their foreclosure suit.[3] Subsequently, the Dombeks sold a portion of the land to defendant M.B.M. Fabricators, Inc. (M.B.M.), which, in turn, mortgaged its interest to defendant National Bank of Wyandotte (Bank). These defendants —the Dombeks, M.B.M., and Bank— have moved this Court for partial summary judgment on the grounds that whatever interest plaintiff may have had in the Romulus property has been cut off by the foreclosure and sale under the Dombek senior mortgage, or, if plaintiff's interest survived, then plaintiff is, nevertheless, barred from foreclosing on it at this time because of laches and estoppel and because plaintiff did not seek to intervene in the Dombek foreclosure proceedings despite notice that such proceedings were in progress.

At the outset it should be observed that unopposed affidavits show conclusively that plaintiff was aware, at least sometime prior to the entry of a decree of foreclosure in favor of the Dombeks in July of 1963, that the Dombeks were in the process of foreclosing on their interest in the Romulus tract. Conversely, these same documents make it apparent that, before the Dombeks purchased at the judicial sale, they had equal notice of plaintiff's second mortgage.

Much of the discussion in the briefs filed in conjunction with the present motions deals with the significance, in light of the Michigan procedural rules in effect at the time of the Dombek foreclosure, of the fact that, after the first foreclosure proceedings had been commenced, the mortgagor, Union, made several additional payments on its obligation to the Dombeks and of the fact that thereafter the Dombeks filed a supplemental bill of foreclosure. Counsel argue whether or not this supplemental bill actually began a new foreclosure proceeding when plaintiff's second mortgage was clearly of record. Doubtless, if the sale to the Dombeks really did take place under a foreclosure commenced when they, as mortgagees, had constructive notice of plaintiff's interest in the Romulus property, many of the difficulties otherwise inherent in the present questions would be absent. Nevertheless, it is not necessary to delve into the fine points of dated Michigan procedure in order·to reach the correct result in ruling upon the pending motions.

■■ We begin, rather, with a basic proposition of mortgage law: a junior mortgagee's interest in property, if properly recorded prior to the commencement of proceedings to foreclose a senior encumbrance, is not cut off by the foreclosure unless he is made a party thereto. Avery v. Ryerson, 34 Mich. 362 (1876); Baker v. Pierson, 6 Mich. 522 (1859). This rule does not mean, of course, that the junior interest is superior to the senior interest, nor that the unjoined junior interest holder can automatically oust the purchaser at the sale conducted pursuant to a decree of foreclosure entered on behalf of the senior encumbrancer. It means only that the second mortgage is still unforeclosed and that whatever rights were possessed by the junior mortgagee prior to foreclosure of the senior mortgage are still intact. By the same token, the rights of the mortgagor, now held by the purchaser, are still viable as against the unforeclosed junior mortgagee. Thus, the purchaser can redeem the interest held by the junior encumbrancer. See generally 59 C.J.S. Mortgages § 524.

The specific question presented by these motions is whether this fundamental principle is somehow rendered inapplicable by the fact that the junior encumbrance in the present case arose and was recorded a few months after the senior encumbrancers had filed an action to foreclose their mortgage but some two

---

**3.** There is no showing that the sale was confirmed. However, the outcome of this decision does not depend upon the confirmation, or lack thereof, of the sale under the Dombek foreclosure.

years before the sale pursuant to the foreclosure proceedings took place. It appears that the answer is in the negative.

 That this is the conclusion reached, of course, does not necessarily mean that plaintiff is not bound by the foreclosure decree; nor does it appear that plaintiff contends otherwise. It is important to realize exactly what the typical foreclosure decree adjudges and directs.[4] Essentially, such an order shows only that a court has found that a mortgagor is in default on his obligation to the mortgagee and that the mortgagee is entitled to have the mortgaged property sold in partial or total satisfaction of the debt. In entering a decree of foreclosure, a court does not vest title to the property in the mortgagee. Much less does it determine, other than among the parties before it, who does and who does not have certain interests in the property. The court does not guarantee that the eventual purchaser pursuant to its decree is going to get a particular estate, or any estate for that matter, in return for his purchase price. See generally Janower v. F. M. Sibley Lumber Co., 245 Mich. 571, 222 N.W. 736, (1929). Therefore, the fact that plaintiff may be bound by the Dombek foreclosure decree does not mean that by virtue of that order alone any interests which it might otherwise have had in the property which was the subject of the decree were cut off. For these reasons, unless plaintiff is attacking—and it is not—a determination actually made by the court which conducted the foreclosure proceedings, e. g., the decision that the Dombeks had a right to foreclose their mortgage, cases such as Carpenter v. Carpenter, 136 Mich. 362, 99 N.W. 395, (1904), cited by defendants, are inapposite. Likewise, the present case is not one requiring consideration of the rules relating to collateral attacks on judgments such as those principles discussed in Life Insurance Co. of Detroit v. Burton, 306 Mich. 81, 10 N.W.2d 315 (1943).

Two other cases relied upon by defendants in pressing these motions for summary judgment require more detailed analysis. The first is Woods v. Love, 27 Mich. 308 (1873), which is cited for the proposition that a foreclosing senior mortgagee is not bound to join, in order to cut off all interests of junior encumbrancers, a second mortgagee whose interest was not made known actually or constructively to the foreclosing party. In *Woods*, the mortgagee, who took his interest in 1856, foreclosed during the period between a sheriff's sale pursuant to an 1859 levy and the date, over a year after the sale, when the sheriff finally conveyed a deed to the sale purchaser. The party who claimed under the sheriff's deed contended that his interest had not been cut off because he had not been joined in the intervening mortgage foreclosure proceedings. The court appears to have held only that the claimant had not proven that the mortgagee *ever* had notice of the existence of the rights conferred upon the holder of the sheriff's deed prior to the time when the deed was actually delivered to him. Then, by way of dicta, the court observed that, for all that appeared in the record, the foreclosure was a complete bar to all persons interested in the equity of redemption. This opinion is not controlling because the court did not indicate that the mortgagee could disregard the existence of a junior interest holder simply because the mortgagee was unaware of the outstanding claim when he commenced his foreclosure proceedings, even though he had actual knowledge shortly thereafter and for a long period of time preceding the foreclosure sale. As will be noted below, the Dombeks, the senior encumbrancers here, had actual knowledge of the existence of the plaintiff's mortgage some two years before the land in controversy was sold pursuant to the decree of foreclosure entered in their favor. Similarly, the dicta in *Woods* is of little value because it is not clear from the opinion whether

---

4. While the decree entered in the Dombek foreclosure is not set out in this record, it is assumed that it was in usual form.

the court, when it said that the foreclosure presumably cut off all interests in the equity of redemption, meant that the entire group of separate steps, including the foreclosure sale, which make up a foreclosure, or the mere commencement of the action, had this effect.

The facts in Baker v. Pierson, 5 Mich. 456 (1858), are complex, but for our purposes can be greatly condensed. Essentially, the case arose from a situation in which there existed four mortgages subsequent in priority to the one upon which foreclosure had been commenced. The last mortgage had been given to Pierson. He, apparently, was the only junior encumbrancer who had not been joined in the foreclosure proceedings. After the bill of foreclosure had been filed, Pierson entered into an agreement with one Larned, the assignor of the equity of redemption of the mortgage under foreclosure, by which Larned put Pierson into possession of the property. Larned apparently was a party to the foreclosure, as well he should have been. The question before the court was whether Pierson or Baker, the purchaser at the foreclosure sale, was entitled to possession. In ruling in favor of Baker, the court specifically noted that Pierson's claim to possession in no way evolved from any rights conferred upon him as mortgagee. It went on to say that Pierson had had notice *when he took possession* that the interest of Larned, under whose title he entered into possession, was the subject of litigation and that, under these circumstances, he could not have rights superior to those of the litigant under whom he claimed. Two features in *Pierson* serve as a basis for easily distinguishing that case from the present one. In the first place, plaintiff here is not said to have had knowledge of the commencement of the Dombek foreclosure proceedings when it

took the second mortgage. The affidavits submitted by defendants in support of the pending motions show only that plaintiff was aware of the litigation as of October 31, 1961, a date some two weeks after it had taken its mortgage.[5] Second, the issue in *Pierson* was a question of possession. The court did not actually deal with the problem here presented: whether a mortgagee who takes his interest while a suit to foreclose a prior mortgage is pending is barred from exercising the most fundamental rights to which a mortgage interest in an equity of redemption entitles its holder.

The two cases most heavily relied upon by plaintiff are also something less than controlling. The junior mortgage involved in Avery v. Ryerson, supra, 34 Mich. 362 (1876), was of record before the senior mortgagee commenced foreclosure proceedings. However, the other case cited, Baker v. Pierson, 6 Mich. 522 (1859) (the second *Pierson* case), is probably the most pertinent authority brought to the Court's attention. It arose from the same factual situation described in connection with the previous discussion of the first *Pierson* case. An additional circumstance, noted in each case but not previously mentioned here, should be pointed out. It appears that although Pierson took his junior mortgage before the first mortgagee commenced foreclosure proceedings, the Pierson mortgage was not recorded until after the litigation had begun. Nevertheless, the court in the second *Pierson* case did say that Pierson's mortgage had not been cut off by the foreclosure and sale in favor of the senior encumbrancer.

The second *Pierson* case, therefore, eliminates from further consideration the question of the effect in the present case of the fact that the Dombeks had

5. Defendants' affidavit states that the Dombeks' attorney had a telephone conversation with plaintiff's attorney on October 31st and that the subject thereof was "foreclosure proceedings." It would be pure speculation to say that this fact shows that plaintiff knew of the litigation two weeks earlier when it took the second mortgage. This is particularly true since the affidavit does not suggest which attorney started the conversation. From all that appears, Dombeks' counsel might have called plaintiff's to inform the latter of the pending foreclosure.

no knowledge prior to their institution of the foreclosure suit of the existence of the plaintiff's second mortgage. Thus, the real issue boils down to this: did the mere fact that the second mortgage came into existence after the Dombek proceedings had begun deprive its owner of the right to consider the mortgage as viable until he should become a party to a proceeding to foreclose it? It is difficult to understand how ordinarily the simple act of filing a lawsuit can impair the rights of anyone, in particular those of a person who is not even destined to become a party to the litigation.

When property is the subject of a suit, however, the commencement of the action, coupled with the necessary steps creating notice of a *lis pendens,* may have this effect. In Ohio, for example, it appears to be the rule that a junior lien is cut off by completed foreclosure proceedings where the encumbrance arose after a *lis pendens* has been properly noticed. See Stewart v. Wheeling and Lake Erie Ry. Co., 53 Ohio St. 151, 41 N.E. 247, 29 L.R.A. 438 (1895). No case in Michigan seems to have dealt with the same problem. It is arguable whether a similar result would be reached in Michigan in light of Union Trust Co. v. C. H. Miles Adams Avenue Corp., 247 Mich. 340, 225 N.W. 594 (1929), a case which will be discussed in greater detail below, and Maximovich v. Wojtowicz, 236 Mich. 643, 211 N.W. 65 (1926).[6]

Speculation upon this issue is unnecessary at the present time, since the record shows nothing to lead the Court to believe that a *lis pendens* was noticed in favor of the Dombeks when plaintiff took its mortgage. Under the law that was in effect in 1961, notice of the foreclosure suit had to have been filed with the Register of Deeds in the county in which the land in litigation was located in order for the bill of complaint to have served as constructive notice of the litigation. Mich.Comp.Laws of 1948, § 619.58. Defendants have not indicated that any pertinent document other than the original mortgage on the Romulus property has ever been filed with the Register of Deeds in Wayne County.

■ Since this motion must be disposed of on the basis that no *lis pendens* was noticed, and since there appears to be no other way by which a plaintiff upon the commencement of a lawsuit can affect the rights of persons without actual knowledge, the only conclusion appropriate to this discussion is that the temporal sequence of the events in this case is no reason for denying to plaintiff the benefit of the general principle of mortgage law referred to previously. In other words, since plaintiff held and properly recorded prior to the Dombek foreclosure sale what must be assumed to have been a valid second mortgage upon the property upon which the Dombeks had the prior encumbrance, and since plaintiff was not a party to the foreclosure action, plaintiff has all the rights under its second mortgage that it would have had if there had never been a foreclosure of the senior mortgage.

■ Defendants argue that even if plaintiff's right to foreclose on its sec-

---

6. It has been held in Michigan that one who takes an interest in property with respect to which a foreclosure proceeding is in progress and does so after a *lis pendens* has been properly filed may not move to prevent the confirmation of the foreclosure sale. Provident Mut. Life Ins. Co. v. Vinton Co., 282 Mich. 84, 275 N.W. 776 (1937). It has also been held that one who obtains a mortgage interest in crops after a *lis pendens* has been noticed in favor of a mortgagee of the land who has commenced foreclosure proceedings cannot demand possession of the crops. Moreland v. Strong, 115 Mich. 211, 73 N.W. 140 (1897). Neither of these cases seems to be controlling on the question whether a mortgagee who comes into existence after a *lis pendens* has been filed in conjunction with a foreclosure under a prior mortgage loses the right to foreclose on his interest where foreclosure involves only a sale of the mortgaged premises, the proceeds of which would be used first to satisfy the debt connected with the senior mortgage and could be claimed by the party who purchased at the foreclosure sale conducted pursuant to a decree entered on behalf of the senior mortgagee.

ond mortgage was not cut off under all circumstances by the Dombek foreclosure, it is barred under the facts of this case because plaintiff could have moved to intervene in the Dombek proceedings and could have asserted its interest at that time. However, they have not cited any case from any jurisdiction holding that one in a position similar to that occupied by plaintiff from October, 1961, until the fall of 1963 is obligated to intervene in a foreclosure suit in order to protect his rights. Indeed, such a rule would seem highly anomalous when one considers that the party most likely to gain from such a principle would be the foreclosing senior lienor who, thanks to the junior mortgagee's voluntarily putting his interest on the block, would theoretically be able to realize more at his own foreclosure sale because the property would be sold free of one more encumbrance. In any event, it seems clear on the basis of Union Trust Co. v. C. H. Miles Adams Avenue Corp., supra, that in Michigan not only need the holder of a junior encumbrance which arises after the commencement of a foreclosure suit by a senior mortgagee not intervene in order to protect his interest, but also that he can do so only with the consent of the original plaintiff. In that case, after Union Trust had begun to foreclose its mortgage on a leasehold belonging to the defendant C. H. Miles Corporation, the Netting Company took several judgments against the Corporation and levied upon the leasehold. Netting then moved to intervene in the foreclosure suit. Although the Michigan Supreme Court, affirming the trial court's denial of the motion, observed that Netting desired to intervene principally to attack Union Trust's mortgage rather than to enforce

its own lien, the rule announced by the court does not appear to have been tailored to situations where a similar purpose motivates the would-be intervenor. The court said, referring to an opinion of the Minnesota Supreme Court:

> "This decision * * * is authority for holding * * * that a junior incumbrancer, becoming such after the institution of proceedings to foreclose a prior mortgage lien, is not a necessary party defendant, and has no right to intervene in the foreclosure suit." [7]

Although the court mentioned the then controlling statute dealing with intervention, it specifically noted that it was reaching its decision on the basis of judicial policy existing independent of the legislation. Therefore, there is no reason to believe that the principle announced in *Union Trust* has been weakened by changes in the general procedural rules relating to intervention.

■ Lastly, defendants contend that estoppel and laches still bar plaintiff's right to foreclose, even if he need not have intervened in the Dombek proceedings. The basis of the argument seems to be that there is something inherently inequitable—if not outright unconscionable—about plaintiff's waiting to foreclose on its mortgage until after M.B.M. and Bank, both of which had constructive notice of plaintiff's mortgage, purchased interests in the Romulus property which were accompanied by the benefits of warranties of title given by the Dombeks, who had actual and constructive knowledge of the mortgage. No doubt, a mortgagee can mislead another into believing that he will not enforce his interest and thus be denied by the doctrines of estoppel or laches the right to do so. It is sufficient to say that there is no indication in the record at this time that

---

**7.** Immediately after the quoted passage, the court noted:

"Intervention is not necessary for the protection of his [the junior incumbrancer's] rights. As said by counsel for the plaintiff in their brief: 'A purchaser or incumbrancer *pendente lite* can always be protected in his interests in the property by filing his own original bill asserting his claim to the property.'"

This statement lends support to the conclusion reached above in connection with the question whether the plaintiff's mortgage interest was cut off by the Dombek foreclosure suit, since it arose after the litigation had been commenced.

plaintiff did anything to lead any of the moving parties to act to their prejudice in the belief that plaintiff would not enforce its mortgage.

The motions for summary judgment must be denied. An appropriate order may be submitted.