ADVANTA NATIONAL BANK v McCLARTY

Docket No. 236259. Submitted February 11, 2003, at Detroit. Decided June 17, 2003, at 9:05 A.M. Leave to appeal sought.

Advanta National Bank and 3 S Investment Group, Inc., brought an action in the Macomb Circuit Court against Homer W. McClarty, trustee in bankruptcy for Roderick D. Tennant, seeking relief from a judgment of foreclosure obtained by Erb Lumber, Inc., on a construction lien. Before the action, Erb Lumber filed a claim of lien against real property owned by Tennant. On July 29, 1998, 3 S loaned money to Tennant and received a mortgage from Tennant, which was recorded on September 3, 1998. On September 26, 1998, Tennant executed a mortgage with the plaintiff Advanta to secure a loan, but this mortgage was not recorded until October 28, 1998. On October 2, 1998, Erb Lumber initiated foreclosure proceedings on its construction lien and filed a lis pendens, but did not name Advanta or 3 S as parties to the proceeding. Erb Lumber obtained a judgment of foreclosure, purchased the property at the foreclosure sale, and recorded its deed in July 1999. In August 1999, Tennant filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Eastern District of Michigan. A subsequent order of the bankruptcy court allowed parties seeking to challenge the construction lien foreclosure proceedings to proceed. Thereafter, Advanta and 3 S brought their action against the bankruptcy trustee, but 3 S settled its claims. The trustee moved for summary disposition, arguing that Erb Lumber was not required to name Advanta as a party to the foreclosure proceedings because it had no actual or constructive notice of Advanta's interest. Advanta argued that Erb Lumber was required to name Advanta as a party under the Construction Lien Act, MCL 570.1101 et seq., and, because it did not, Advanta's interest in the property was not extinguished. The trial court, Deborah A. Servitto, J., determined that Erb Lumber had substantially complied with the act, and granted summary disposition in favor of the trustee. Advanta appealed.

The Court of Appeals held:

1. The trustee's motion for summary disposition was properly granted because Erb Lumber substantially complied with MCL 570.1117(4), which requires that each person who has an interest in

the real property at the time foreclosure proceedings are initiated to be named as a party to the action. A lien claimant cannot be made to find every possible party who claims some interest in the property. Rather, a lien claimant can only be required to notify every party who has a known or recorded interest. Here, the plaintiff's mortgage was recorded after the claim of lien was filed and after foreclosure proceedings were initiated. Erb Lumber, which had no actual or constructive notice of the plaintiff's mortgage, was not required to name the plaintiff as a party.

2. The plaintiff's junior mortgage was extinguished by the foreclosure of the senior mortgage because the plaintiff did not redeem at the foreclosure sale; thus, Erb Lumber's purchase of the property at the foreclosure sale was not subject to the plaintiff's junior mortgage under MCL 570.1119(3).

Affirmed.

*Garan Lucow Miller, P.C.* (by *Robert D. Goldstein* and *Steven A. Matta*), for the plaintiff.

Before: GAGE, P.J., and WILDER and HOOD, JJ.

PER CURIAM. Plaintiff Advanta National Bank appeals as of right the trial court's grant of summary disposition to defendant Homer W. McClarty. We affirm.

I

In July 1996, Roderick D. Tennant and his wife purchased vacant real property in Macomb Township and began construction of a home. Erb Lumber, Inc., provided construction materials for the property and on March 26, 1998, filed a claim of lien against the property with the Macomb County Register of Deeds. On July 29, 1998, plaintiff 3 S Investment Group, Inc., loaned money to the Tennants and received a mortgage, which was recorded on September 3, 1998.[1] On

---

[1] 3 S Investment's claims were resolved through an "order authorizing settlement and compromise of claims between the estate and 3 S Invest-

September 26, 1998, the Tennants executed a mortgage with Advanta to secure a loan, but the mortgage was not recorded until October 28, 1998. In the meantime, on October 2, 1998, before Advanta's mortgage was recorded, Erb Lumber initiated foreclosure proceedings on its construction lien in the Macomb Circuit Court and recorded a notice of lis pendens. The only parties named in this action were Roderick and Donna Tennant and Plymouth Capital Company, Inc.

On March 8, 1999, the Macomb Circuit Court entered a "Default Judgment and Judgments of Foreclosure of Construction Lien in Favor of Erb Lumber, Inc." Included within the judgment was a four-month redemption period. A judicial forfeiture sale was conducted on June 25, 1999, at which Erb Lumber was the highest bidder and, on July 19, 1999, the trial court confirmed the sale and Erb Lumber received and recorded the clerk's deed of foreclosure.

On August 19, 1999, Roderick Tennant commenced individual Chapter 7 bankruptcy proceedings in the United States Bankruptcy Court for the Eastern District of Michigan. Thereafter, on motion of the bankruptcy trustee, defendant Homer McClarty, the bankruptcy court authorized McClarty to borrow money to purchase the subject property from Erb Lumber. On May 3, 2000, the bankruptcy court directed McClarty to conduct a sale of the property to Roderick Tennant. The order directing the sale provided that the property was free and clear of all liens and encumbrances, but also stated that any parties seeking to

---

ment," which the United States Bankruptcy Court entered on February 26, 2001. It is not a party to this appeal.

challenge the construction lien foreclosure proceedings initiated by Erb Lumber were granted relief from the automatic stay for the limited purpose of commencing action to challenge the proceedings and establish the validity of their purported liens.

Thereafter, on June 2, 2000, Advanta and 3 S Investment filed the instant action, requesting relief from the default judgment and Erb Lumber's construction lien judgment of foreclosure. McClarty moved for summary disposition, arguing that Erb Lumber was not required to name Advanta as a party to the foreclosure action because it had no actual or constructive notice of Advanta's interest in the subject property on the date that it filed its foreclosure action. Advanta filed a cross-motion for summary disposition, arguing that subsection 117(4) of the Construction Lien Act, required Erb Lumber to make Advanta a party to the foreclosure action. Because Erb Lumber did not make Advanta a party to the action, Advanta argued that its property interest was not extinguished. By way of a written opinion and order, the trial court granted McClarty's motion for summary disposition, opining that because Advanta had not obtained its mortgage until six months after Erb Lumber filed its claim of lien, and because the mortgage was not recorded until approximately one month later and several weeks after commencement of Erb Lumber's foreclosure action, Advanta's lien interest was extinguished.

II

We review de novo a trial court's grant or denial of a motion for summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201

(1998). Issues of statutory construction present questions of law that are also reviewed de novo. *Oakland Co Bd of Co Rd Comm'rs v Michigan Prop & Cas Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998).

III

A

Resolution of this case requires this Court to interpret § 117 of the Construction Lien Act (CLA), MCL 570.1101 *et seq.* In *Vugterveen Sys v Olde Millpond Corp*, 454 Mich 119, 121; 560 NW2d 43 (1997), the Supreme Court addressed the purpose of the CLA and determined that the act "was intended to protect the interests of contractors, workers, and suppliers through construction liens, while protecting owners from excessive costs." *Id.* Further, the Court stated that the act should be "liberally construed to effectuate these purposes." *Id.* The CLA contains a substantial compliance provision, MCL 570.1302(1), which provides:

> This act is declared to be a remedial statute, and shall be liberally construed to secure the beneficial results, intents, and purposes of this act. Substantial compliance with the provisions of this act shall be sufficient for the validity of the construction liens provided for in this act, and to give jurisdiction to the court to enforce them.

MCL 570.1117(4) states, in relevant part:

> [E]ach person who, at the time of filing the action, has an interest in the real property involved in the action which would be divested or otherwise impaired by the foreclosure of the lien, shall be made a party to the action.

Advanta contends that this provision required Erb Lumber to make Advanta a party to the foreclosure action and, because it did not, Advanta's lien was not extinguished.

While a strict reading of subsection 117(4) may support plaintiff's contention, only substantial compliance with the statute is required in this case. The Supreme Court held that the substantial compliance provision does not apply to all requirements of the CLA. *Northern Concrete Pipe, Inc v Sinacola Cos-Midwest Inc*, 461 Mich 316, 321; 603 NW2d 257 (1999).

> The scope of a statutory "substantial compliance" provision requires an analysis, on a case-by-case basis, of the following logically relevant factors among others: the overall purpose of the statute; the potential for prejudice or unfairness when the apparent clarity of a statutory provision is replaced by the uncertainty of a "substantial compliance" clause; the interests of future litigants and the public; the extent to which a court can reasonably determine what constitutes "substantial compliance" within a particular context; and, of course, the specific language of the "substantial compliance" and other provisions of the statute. [*Id.* at 321-322.]

In applying these factors in *Northern Concrete Pipe*, the Court held that the substantial-compliance provision cannot be applied to extend the ninety-day statutory period for filing a construction lien under the CLA.

Recently, however, this Court held that the substantial-compliance provision applies to various provisions of the CLA. In *Central Ceiling & Partition, Inc v Dep't of Commerce*, 249 Mich App 438, 442; 642 NW2d 397 (2002), the majority of a panel of this Court held that the substantial-compliance provision can be applied to determine if a lien claimant has met the

ninety-day statutory period.[2] Also, in *Alan Custom Homes, Inc v Krol*, 256 Mich App 505; 667 NW2d 379 (2003), this Court interpreted § 110 of the CLA, MCL 570.1110, and held that the substantial-compliance provision applied to determine whether a party satisfied the notice requirement of subsection 110(8).

There are, however, no cases determining whether the substantial-compliance provision applies to subsection 117(4). In this case, the trial court relied on *Glanz & Killian Co v Garland Mfg Co*, 53 Mich App 210; 218 NW2d 791 (1974), to construe MCL 570.1117(4) and determined that substantial compliance with the statute was sufficient to sustain the validity of Erb Lumber's construction lien on the property. In *Glanz*, this Court determined whether, under MCL 570.10, which was repealed by 1980 PA 497, an original mechanic's lien could be enforced against a party that was not made a party to the original proceedings. *Glanz, supra* at 214. This Court held that the original mechanic's lien could be enforced against the party who was not made a party to the original proceedings where the action between the plaintiff and debtor was filed in July 1971 and the defendant had no recorded interest in the property until October 7, 1971.

We find *Glanz* to be of limited precedential value for two reasons: first, this Court in *Glanz* was interpreting MCL 570.10, which was repealed by the current CLA, and, second, the repealed MCL 570.10 expressly provided that only parties with recorded liens must be named as parties to the foreclosure.[3] In

---

[2] The Supreme Court granted leave to appeal in that case on March 23, 2003.

[3] MCL 570.10 provided:

comparison, subsection 117(4) does not differentiate between naming recorded and unrecorded interests. However, to effect the Legislature's intent through statutory construction, "the changes in the act must be construed in light of preceding statutes and the historical legal development of . . . construction liens." *MD Marinich, Inc v Michigan Nat'l Bank*, 193 Mich App 447, 452; 484 NW2d 738 (1992). Therefore, *Glanz* is beneficial in gaining insight into the Legislature's intent.

Although it is a cardinal rule of statutory construction that a clear and unambiguous statute warrants no further interpretation and requires full compliance with its provision, *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 135; 545 NW2d 642 (1996), "the Legislature provided an exception to that rule, in the form of the 'substantial compliance' provision." *Northern Concrete Pipe, supra* at 320-321. Thus, the substantial-compliance provision can be used to interpret a clear and unambiguous statute. While the plain language of subsection 117(4) is clear, we find substantial compliance with the statute is consistent with *Northern Concrete Pipe*.

In this case, application of the CLA's substantial-compliance provision supports defendant's contention that notice to all known or recorded interests satisfies subsection 117(4). Here, substantial compliance

---

Proceedings to enforce such lien shall be by bill in chancery, under oath, and notice of lis pendens recorded in the office of the register of deeds, shall have the effect to continue such proceedings. And in such proceedings, the complainant shall make all persons having rights affected or to be affected by such liens as recorded in the office of the register of deeds, and all persons holding like items so recorded, and those having recorded notice of intention to claim a lien, parties to such action.

with subsection 117(4) would protect the rights of suppliers to payment for materials by allowing construction liens to be foreclosed without the anxiety of having to relitigate the merits of the original proceedings because of an unnamed party. See *Pitsch v ESE Michigan, Inc*, 233 Mich App 578, 602; 593 NW2d 565 (1999). Conversely, the rights of contractors, subcontractors, and suppliers to payment for wages and materials would be hindered if they were required to name unknowable parties to foreclosure actions. *Northern Concrete Pipe, supra* at 323. Moreover, concerns of prejudice or unfairness that may follow from the uncertainty of permitting substantial compliance with subsection 117(4) are minimized because of mandatory compliance with recording statutes, filing a lis pendens, and following the CLA's other notice requirements. *Id.* Finally, subsection 117(4) concerns the requirements for filing certain information with public officials and those providing for notice, and is the type of provision to which the substantial-compliance provision may suitably be applied. *Id.* Analyzing these factors and reviewing the current statute in relation to its predecessor, we find the substantial-compliance provision applicable to subsection 117(4). A lien claimant cannot be made to find every possible party who claims to have some kind of interest in the property. Instead, a lien claimant can only be required to notify every party who has a known or recorded interest.[4]

In this case, Erb Lumber filed its claim of lien against the property on March 26, 1998. The Tennants executed a mortgage on the property with Advanta on

---

[4] We note that other current lien statutes support this position as well. See, e.g., MCL 570.257.

September 26, 1998; however, the mortgage was not recorded until October 28, 1998. Before Advanta recorded its mortgage, Erb Lumber initiated foreclosure proceedings on October 2, 1998. In foreclosing its lien, Erb Lumber followed the procedures of the CLA. The foreclosure action was filed, pursuant to MCL 570.1118(1), in the county where the property was located. Pursuant to MCL 570.1117(2), a notice of lis pendens was filed with the register of deeds in the county where the property was located. Public notice of the judicial sale was provided in the Macomb County Legal News on seven different occasions, and notices were posted in six separate places.

Most significant, in this case, is that there is no evidence that Erb Lumber had actual notice of any alleged interest Advanta had in the property. Erb Lumber did not have notice at the time it commenced foreclosure of any possible interest Advanta might have had. There was no evidence produced that Erb Lumber learned of Advanta's interest any time thereafter.[5] Moreover, Advanta had constructive notice of Erb Lumber's lien at the time it obtained its mortgage interest. Erb Lumber filed a notice of lis pendens and notice of the foreclosure sale was adequately published. Considering this, we conclude there was no reason for Erb Lumber to make Advanta a party to the action between Erb Lumber and the Tennants. Therefore, Erb Lumber substantially complied with

---

[5] We note that a minute amount of Roderick Tennant's deposition testimony was presented to the lower court. During this testimony, Tennant suggested that he may have mentioned Advanta's mortgage to Erb Lumber at some time, but he could not remember. This testimony was sketchy and inconclusive as Mr. Tennant could not remember if he had in fact advised Erb Lumber of Advanta's interest or when he might have done so. Therefore, it is insufficient to establish knowledge on the part of Erb Lumber.

the statute by giving notice to all known or recorded interests.

B

Plaintiff is correct that it is a basic proposition of mortgage law that a junior mortgagee's interest in property, if properly recorded before the commencement of proceedings to foreclose a senior encumbrance, is not cut off by the foreclosure unless it is made a party to the proceedings. See *Avery v Ryerson*, 34 Mich 362 (1876). However, the law is not as precise when the junior mortgagee's interest is not recorded until after commencement of proceedings to foreclose the senior encumbrance. In an attempt to support its position that its mortgage could not be extinguished, Advanta cites *National Acceptance Co of America v Mardigian*, 259 F Supp 612 (ED Mich, 1966), for the proposition that when a junior mortgagee was not a party to the foreclosure action, it has all the rights under its second mortgage that it would have had if there had been no foreclosure of the senior mortgage. *Id.* at 617. In that case, the junior mortgage was recorded after the senior mortgagee had filed an action to foreclose but before the foreclosure sale took place. *Id.* at 614-615. The court held that the junior encumbrancer's right to foreclose on its mortgage was not cut off by the foreclosure proceedings. *Id.*

Even if *National Acceptance* were precedentially binding, it is distinguishable for several reasons. In that case, the senior mortgagee failed to file a notice of lis pendens. Here, as previously addressed, Erb Lumber complied with all other provisions in the CLA. It has been held in Michigan that a party who takes

an interest in property that is the subject of a foreclosure proceeding, and does so after a lis pendens has been properly filed, cannot move to prevent the confirmation of the foreclosure sale. See *Provident Mut Life Ins Co v Vinton Co*, 282 Mich 84; 275 NW 776 (1937). More importantly, the junior mortgagee in *National Acceptance* attempted to redeem its interest. In this case, Advanta made no attempt to redeem during the applicable four-month redemption period.[6] See MCL 570.1121(3). Most importantly, however, is the fact that in *National Acceptance*, the senior encumbrancer had notice of the junior mortgage for some time before the judicial sale. Here, there is no evidence that Erb Lumber had notice of Advanta's interest in the property. In summary, in this case, Erb Lumber properly recorded its lien, properly initiated foreclosure proceedings, and properly filed a notice of lis pendens. Advanta's alleged interest in the property was not recorded until after foreclosure proceedings were initiated and a notice of lis pendens was filed.

It is well established that a purchaser at a foreclosure sale of a second mortgage takes the property subject to the first mortgage, but the contrary is not true. *Bd of Trustees of Gen Retirement Sys of Detroit v Ren-Cen Indoor Tennis & Racquet Club*, 145 Mich App 318, 322; 377 NW2d 432 (1985). By operation of MCL 570.1119(3), Erb Lumber had priority, and, con-

---

[6] We note that Erb Lumber's construction lien was filed well before the Tennants executed a mortgage with Advanta. Although Advanta acknowledged that title work was performed on the property before closing with the Tennants, it has no explanation for why this title work did not reveal Erb Lumber's lien interest. Further, there is no explanation for why Advanta's mortgage was not recorded until almost a month after its execution.

sequently, Advanta's mortgage was junior. Subsection 119(3) provides:

> A construction lien arising under this act shall take priority over all other interests, liens, or encumbrances which may attach to the building, structure, or improvement, or upon the real property on which the building, structure, or improvement is erected when the other interests, liens, or encumbrances are recorded subsequent to the first actual physical improvement.

It is undisputed that Advanta's mortgage was recorded after the first actual physical improvement of the property. The foreclosure of a senior mortgage extinguishes the lien of a junior mortgagee where the junior mortgagee did not redeem at the foreclosure sale. *Swarthout v Shields*, 185 Mich 427, 431; 152 NW 202 (1915). Therefore, Erb Lumber's purchase of the property was not subject to Advanta's junior mortgage, which was extinguished after the four-month redemption period expired. Advanta claims it was prejudiced by lack of notice of the foreclosure sale. However, as noted, Erb Lumber published notice of the sale on seven occasions in six different places. Further, and most importantly, the construction lien was recorded before the mortgage was executed and a notice of lis pendens was filed before the mortgage was recorded—all of which provided notice to Advanta. Had Advanta properly checked the records and properly recorded its mortgage when it was executed, Advanta would have been made a party to the subsequent proceedings. Under the circumstances, any "prejudice" to Advanta was brought about by Advanta's own negligence and lack of diligence. Thus, the trial court properly granted summary disposition to McClarty.

Affirmed.